IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., and JOHN ROE, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | CIVIL ACTION NO. 4:19-cv-1934 |
| JUDGE WAYNE MACK, in his personal capacity and in his official capacity on behalf of the State of Texas, | § § § § | |
| *Defendant*. | § | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant, Judge Wayne Mack in his individual capacity, moves to dismiss the Complaint (Dkt. 1) with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dismissal is warranted for two independent reasons.

First, Plaintiffs Freedom From Religion Foundation and John Roe (together "Plaintiffs") lack Article III standing, so this Court lacks jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).

Second, Plaintiffs have failed to state a claim upon which relief can be granted because the practice about which they complain—Judge Mack's opening routine, including the invocation offered by volunteer chaplains—is constitutionally permissible.  *See* Fed. R. Civ. P. 12(b)(6).

The brief accompanying this Motion further sets out reasons for dismissal.

# TABLE OF CONTENTS

Table of Authorities .............................................................................................................iii

Introduction...........................................................................................................................1

Background ............................................................................................................................2

    I.    Plaintiffs' Factual Allegations .................................................................................2

    II.    Procedural History ..................................................................................................5

Statement of the Issues..........................................................................................................7

Summary of the Argument.....................................................................................................7

Argument ...............................................................................................................................8

    I.    This Court lacks subject-matter jurisdiction because Plaintiffs lack standing. .............8

        A.    Plaintiffs have not pleaded a plausible injury in fact. ...........................................8

        B.    Plaintiffs have not adequately alleged that any harm is certainly impending—and they cannot plausibly allege that they will appear before Judge Mack again...............................................................................................................11

    II.    Judge Mack's opening routine—including the brief invocations presented by the volunteer chaplains—is constitutional. ..................................................................14

        A.    Extensive historical tradition supports Judge Mack and his opening routine. .......15

            1.    Our Nation has a deep and rich history of judicial prayer...........................15

            2.    Our Nation has a similarly deep and rich history of legislative and executive prayer—as numerous courts, including the U.S. Supreme Court, have recognized..................................................................20

        B.    Judge Mack's practice is voluntary—not coercive. ..............................................21

        C.    Judge Mack's practice is inclusive—not discriminatory. .....................................23

Conclusion ..........................................................................................................................25

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Humanist Ass'n v. McCarty*,
   851 F.3d 521 (5th Cir. 2017) ......................................................................22, 24

*Am. Legion v. Am. Humanist Ass'n*,
   139 S. Ct. 2067 (2019).........................................................................14, 15, 24

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997) ...................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................10

*Bormuth v. Cty. of Jackson*,
   870 F.3d 494 (6th Cir. 2017) .............................................................20, 22, 23, 25

*Calvin's Case*,
   (1608) 77 Eng. Rep. 379 (K.B.) 409 ...............................................................19

*Chhim v. Univ. of Tex. at Austin*,
   836 F.3d 467 (5th Cir. 2016) .........................................................................2

*Chisolm v. Georgia*,
   2 U.S. (2 Dall.) 419 (1793) ..........................................................................19

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)...................................................................................12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..................................................................................11

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015) .........................................................................11

*Doe v. United States*,
   853 F.3d 792 (5th Cir. 2017) ..........................................................................3

*Elk Grove Unified Sch. Dist. v. Newdow*,
   542 U.S. 1 (2004)..................................................................................6, 21

*Fields v. Speaker of Pa. House of Representatives*,
   2019 WL 3979588 (3d Cir. Aug. 23, 2019)........................................................23

*Freedom from Religion Found., Inc. v. Mack*,
   2018 WL 6981153 (S.D. Tex. Sept. 27, 2018) ......................................................6

*Freedom from Religion Found., Inc. v. Mack*,
   No. 4:17-cv-00881 (S.D. Tex. Dec. 20, 2018).......................................................6

TABLE OF AUTHORITIES
(continued)

Page(s)

*Freedom from Religion Found., Inc. v. Perry,*
2011 WL 3269339 (S.D. Tex. July 28, 2011)................................................................9

*Henok v. Kessler,*
78 F. Supp. 3d 452 (D.D.C. 2015), *aff'd,*
2015 WL 5210518 (D.C. Cir. Aug. 12, 2015) ...........................................................12

*Hickenlooper v. Freedom from Religion Found., Inc.,*
338 P.3d 1002 (Colo. 2014)........................................................................................9

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977)..................................................................................................14

*Lee v. Weisman,*
505 U.S. 577 (1992)....................................................................................................6

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)....................................................................................................8

*Lynch v. Donnelly,*
465 U.S. 668 (1984)..................................................................................................15

*M'Ilvane v. Coxe's Lessee,*
6 U.S. (2 Cranch) 280 (1805).....................................................................................19

*Marsh v. Chambers,*
463 U.S. 783 (1983)..................................................................................14, 15, 16, 20

*McCreary Cty. v. ACLU of Ky.,*
545 U.S. 844 (2005)..................................................................................................16

*Medina v. Devine,*
No. 4:96-cv-02485 (S.D. Tex. Apr. 2, 1997), *aff'd,*
146 F.3d 868 (5th Cir. 1998) ................................................................................12, 13

*Mitchell v. Helms,*
530 U.S. 793 (2000)..................................................................................................24

*N.C. Civil Liberties Union Legal Found. v. Constangy,*
947 F.2d 1145 (4th Cir. 1991) ...................................................................................15

*Natural Arch & Bridge Soc'y v. Alston,*
209 F. Supp. 2d 1207 (D. Utah 2002).........................................................................14

*New Doe Child #1 v. United States,*
901 F.3d 1015 (8th Cir. 2018) ...................................................................................20

*Newdow v. Bush,*
355 F. Supp. 2d 265 (D.D.C. 2005).......................................................................20, 21

*Pelphrey v. Cobb Cty.,*
410 F. Supp. 2d 1324 (N.D. Ga. 2006).......................................................................25

*Pennsylvania v. West Virginia,*
262 U.S. 553 (1923)..................................................................................................19

TABLE OF AUTHORITIES
(continued)

Page(s)

*Soc'y of Separationists, Inc. v. Herman*,
  959 F.2d 1283 (5th Cir. 1992) ...................................................................12

*State v. Washington*,
  1 S.C.L. (1 Bay) 120 (S.C. 1791) ...............................................................18

*Stauffer v. Gearhart*,
  741 F.3d 574 (5th Cir. 2014) .....................................................................14

*Stone v. Life Partners Holdings, Inc.*,
  26 F. Supp. 3d 575 (W.D. Tex. 2014)..........................................................3

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014)......................................................................... *passim*

*United States v. Gibert*,
  25 F. Cas. 1287 (C.C.D. Mass. 1834) .........................................................19

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982)...........................................................................8, 9, 10

*Van Orden v. Perry*,
  351 F.3d 173 (5th Cir. 2003), *aff'd*,
  545 U.S. 677 (2005) ..................................................................................16

*Van Orden v. Perry*,
  545 U.S. 677 (2005)...................................................................................15

*Zorach v. Clauson*,
  343 U.S. 306 (1952).............................................................................18, 21

**Statutes, Rules & Attorney General Opinions**

42 U.S.C. § 1983 ...............................................................................................1

Fed. R. Civ. P. 12 ...............................................................................................7

Tex. Att'y Gen. Op. No. KP-0109,
  2016 WL 4414588 (2016)....................................................................5, 6, 15

Tex. R. Civ. P. 226 ...........................................................................................18

Tex. R. Civ. P. 236 ...........................................................................................18

**Other Authorities**

Akhil Reed Amar,
  *The Bill of Rights as a Constitution*,
  100 Yale L. J. 1131 (1991) ...........................................................................18

1 Charles Warren,
  *The Supreme Court in United States History*
  (rev. ed. 1926).......................................................................................16, 17

*Circuit Court:  September Term Convenes with Judge Cook on the Bench*,
  Hopkinsville Kentuckian (Sept. 25, 1900)....................................................17

TABLE OF AUTHORITIES
(continued)

Page(s)

2 *The Documentary History of the Supreme Court of the United States*
(Maeva Marcus ed., 1988) ............................................................................16, 17, 18

*Editorial Brevities*,
Anti-Slavery Bugle (June 14, 1851) .....................................................................17

*Open Court with Prayer:  Judge Holton Presides in the Circuit Court at Brookhaven*,
Macon Beacon (Sept. 18, 1914)..............................................................................17

Texas State Preservation Board,
*The Texas Capitol:  A Self-Guided Tour*..............................................................16

Transcript of Oral Argument,
*Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*,
467 S.W.3d 494 (Tex. 2015) (Nos. 13-1026, 14-0109),
2015 WL 1648039 ....................................................................................................16

The Wayne Mack Campaign,
*About* ........................................................................................................................3

## INTRODUCTION

This lawsuit asks the Court to declare unconstitutional a judicial tradition older than the Republic itself.  Just as American judges have done for centuries, Judge Wayne Mack—a Justice of the Peace in Montgomery County—permits a volunteer chaplain, from a rotating, interfaith group of chaplains, to offer a brief invocation before each court session begins.[1]

Just as the U.S. Supreme Court opens each argument session by praying that "God save the United States and this Honorable Court," Judge Mack's guest chaplains solemnize the proceedings in his court by invoking a higher power.  These guest chaplains, who represent a broad diversity of religious beliefs, offer their invocations before the first case is called.  No one is required to listen to these prayers—attendance is completely voluntary.  And no one has alleged that Judge Mack actually discriminates in any way against those who decline to observe this practice.  Judge Mack's practice thus comports fully with the Establishment Clause.

The Freedom From Religion Foundation ("FFRF"), along with pseudonymous individual John Roe (collectively, "Plaintiffs"), brings this lawsuit, seeking a declaration that Judge Mack's practice violates the Constitution.  But Plaintiffs lack standing to bring this lawsuit—they have alleged no cognizable harm, and have not pleaded any certainly impending cognizable injury.  So this Court lacks subject-matter jurisdiction.

Holding that jurisdictional defect to the side, Plaintiffs also cannot prevail on the merits of their claim, because no part of Judge Mack's practice offends the Establishment Clause.  Long-

---

[1]  This motion is filed on behalf of Judge Mack in his individual capacity.  Recognizing that Judge Mack is entitled to absolute judicial immunity, Plaintiffs' seek costs and fees only from the State—not Judge Mack in his individual capacity.  Compl. 18 (seeking "reasonable attorneys' fees and costs against Judge Mack *in his official capacity only*") (emphasis added).  Similarly, Plaintiffs request injunctive relief only "in the event declaratory relief is unavailable," Compl. 18—consistent with Section 1983's admonition that "injunctive relief shall not be granted . . . in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity" unless "declaratory relief [is] unavailable."  42 U.S.C. § 1983; *see* Compl ¶ 95 (alleging Judge Mack is "acting in his official capacity as Justice of the Peace").

standing practice confirms that judicial officers may permit invocations in their courtrooms.  The

U.S. Supreme Court opens each session with a prayer.  So does the Texas Supreme Court—calling

on the Divine to "save the State of Texas, this Honorable Court."  Federal and state courts have

long invited chaplains to pray at the impaneling of grand juries.  Judges throughout history have

reverently pronounced during sentencing proceedings:  "May God have mercy on your soul."  And

they even have included supplications to the Divine in written judicial opinions.  Moreover, Judge

Mack's practice—inviting chaplains to give an opening invocation—differs in no meaningful way

from the Town of Greece's legislative-prayer tradition that the U.S. Supreme Court recently

upheld.  *See Town of Greece v. Galloway*, 572 U.S. 565 (2014).

Plaintiffs overlook all that and ask this Court to declare these deep-seated traditions

unconstitutional.  This Court should decline to do so.  The Complaint should be dismissed with

prejudice.

**BACKGROUND**

## I.    Plaintiffs' Factual Allegations

At the Rule 12(b)(6) stage, this Court must accept all plausible, well-pled allegations as

true.  This brief therefore presents the facts as Plaintiffs tell them in their Complaint.[2]

Judge Wayne Mack is a Justice of the Peace in Montgomery County, Texas.  Compl. ¶ 11.

After taking office in May 2014, Judge Mack started a new chaplaincy program to "assist the Court

System and Law Enforcement with grieving families on tragic death scenes or death call

notifications."  Compl. Ex. A (Dkt. 1-1), at 1; *see* Compl. Ex. C (Dkt. 1-3), at 4, 9 ("Chaplains

bring comfort and consolation to all persons in need with special emphasis on those confronted

---

[2]   For purposes of this motion, Judge Mack presents the Complaint's factual allegations, but he does not concede
that those allegations are true.  *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam).

with fire, death, accidents or natural/manmade disasters . . . includ[ing] the provision of pastoral care to members of law enforcement and emergency agencies.").[3]  As the September 2015 Handbook explains, the "Mission of the Justice Court Chaplaincy" is three-fold:

- Provide care and counseling to employees and family of law enforcement, fire, and emergency medical service agencies.

- Comfort and provide resource information to victims of fire, crime, medical emergency and natural/manmade disasters.

- Assist law enforcement in notifying individuals who have lost a family member in an unexpected manner and comfort them as needed.

Compl. Ex. C, at 9.

In an effort to honor the volunteers and to solemnize the proceedings in his courtroom, Judge Mack regularly invites one of the chaplains who assist law enforcement with grieving families to offer a brief invocation at the start of each court session, before the first case is called. Compl. ¶¶ 32–40, 66–70.  When Judge Mack first began this opening routine in 2014, he would provide the courtroom with a brief introduction of the new chaplaincy program before introducing the volunteer chaplain and inviting attendees to stand for the invocation.  Compl. ¶¶ 32–36.  Judge Mack would then advise the courtroom that anyone was free to leave if they did not wish to attend the opening routine—and "[their] case[s] will not be affected."  Compl. ¶ 34; *see also* Compl. Ex. D (Dkt. 1-4), at 2 (Letter from FFRF to Judge Mack) ("we are not claiming that you are actually biased against those who choose not to participate in your courtroom prayers").

---

[3]  *See also* The Wayne Mack Campaign, *About*, https://www.waynemack.org/about.html (Ex. A) (Judge Mack "started a new Chaplaincy program" to "assist Law Enforcement in times of crisis and tragedy to help families affected . . . start the process of grieving [and] healing").  Judge Mack's campaign website and the Complaint's exhibits are properly considered in ruling on this motion to dismiss because each is cited in the Complaint.  *See* Compl. ¶ 17 (citing website); *see also Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017); *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 603 n.13 (W.D. Tex. 2014) (considering "the full text of documents that are partially quoted or referred to in the complaint").

The original opening routine included a chaplain introduction, chaplain invocation, and the recitation of the U.S. and Texas Pledges of Allegiance. Compl. ¶¶ 33–40. Judge Mack would then take his seat and the docket would be called. Comp. ¶ 40.

In September 2014, FFRF wrote to Judge Mack, complaining that Judge Mack's practice violated the Establishment Clause. Compl. ¶ 42. The next month, Judge Mack wrote an open letter defending his program. Compl. ¶ 43.

In early 2015, Judge Mack revised his opening routine to its current format. Compl. ¶ 65. Now, there are signs outside the courtroom and on a TV screen at the back of the courtroom, explaining that:

> It is the tradition of this court to have a brief opening ceremony that includes a brief invocation by one of our volunteer chaplains and pledges to the United States and Texas state flag[s].
>
> You are not required to be present or participate. The bailiff will notify the lobby when court is in session. See the bailiff or a court clerk if you have any questions.

Compl. ¶¶ 76–77 (capitalization altered). Before Judge Mack enters the courtroom, the bailiff or clerk "gives a brief introductory statement" describing the opening routine. Compl. ¶ 66. That announcement "include[s] a statement that those opposed to prayer may leave the courtroom without affecting the outcome of their cases." Compl. ¶ 66. Then, Judge Mack enters, "talks briefly about his Justice Court Chaplaincy Program[,] and introduces a chaplain from the program." Compl. ¶ 67. Next, "the chaplain leads a prayer," after which "attendees are encouraged to recite the Pledge of Allegiance and the Texas Pledge of Allegiance to the state flag." Compl. ¶¶ 70–71. Finally, the bailiff "announces the rules of the court and the first case is called." Compl. ¶ 72.

Plaintiff Roe has appeared in Judge Mack's courtroom—and witnessed his opening routine "at least 20 times" in the three-year period between fall 2014 and summer 2017. Compl. ¶¶ 8, 32–

33, 84–86.  He has heard the bailiff "announce[] the opportunity to absent oneself during the prayer," but has never left himself and, in December 2016, he did not see anyone else leave either. Compl. ¶¶ 81, 83.  Plaintiff Roe ceased practicing before Judge Mack in mid-2017—since then, he has either filed his clients' claims in district court or simply declined to take on the matter. Compl. ¶¶ 86–88 ("Subsequent to his 2017 appearances in Judge Mack's courtroom . . . Attorney Roe has elected to no longer represent clients before Judge Mack.").

## II.    Procedural History

In October 2014, FFRF filed a complaint against Judge Mack with the Texas State Commission on Judicial Conduct.  Compl. ¶ 44.  In a letter from FFRF to Judge Mack that FFRF included as part of its October 2014 complaint, FFRF made clear to Judge Mack that it was "not claiming that you are actually biased against those who choose not to participate in your courtroom prayers."  Compl. Ex. D, at 5.  Thirteen months later, the Commission "declined to issue any form of discipline against Judge Mack."  Compl. ¶ 48.

In February 2016, both the Commission's Executive Director and the Lieutenant Governor asked the Texas Attorney General to "issue an opinion regarding the constitutionality of Judge Mack's courtroom prayer practice."  Comp. ¶ 54.  FFRF submitted a brief to the Attorney General, "arguing that Judge Mack's courtroom prayer practice is unconstitutional."  Compl. ¶ 55.

In August 2016, the Attorney General concluded that neither Judge Mack's volunteer chaplain program nor his opening routine violated the Establishment Clause.  *See* Tex. Att'y Gen. Op. No. KP-0109, 2016 WL 4414588, at *4 (2016), https://www.texasattorneygeneral.gov/sites /default/files/opinion-files/opinion/2016/kp0109.pdf (Ex. B).  As the Attorney General explained,

> [A] Justice of the Peace's practice of opening daily court proceedings with a prayer by a volunteer chaplain as you describe is sufficiently similar to the U.S. Supreme Court's decision in [*Town of Greece*] such that a court would likely be compelled to agree with [*Town of Greece*] that the long-standing tradition of opening a governmental proceeding with prayer does not violate the Establishment Clause.

*Id.* at \*3 (citing *Town of Greece*, 572 U.S. at 582–90); *see id.* ("As in [*Town of Greece*], nothing . . . suggests that the Justice of the Peace compels or coerces individuals in his courtroom to engage in a religious observance.  Instead, the bailiff provides an opportunity for individuals to leave the courtroom during the prayer and explains that participation in the prayer will have no effect on the decisions of the court.") (citation omitted).

The Attorney General also emphasized that the "judiciary has a 'long-established practice of prayer at public events'"—including the U.S. Supreme Court's practice of opening "its sessions with the prayer, 'God save the United States and this Honorable Court,' since at least 1827."  *Id.* (quoting *Lee v. Weisman*, 505 U.S. 577, 635 (1992), and citing *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 29 (2004) (Rehnquist, C.J., concurring in the judgment)).

Undeterred, FFRF and three pseudonymous plaintiffs—Jane Doe, John Roe, and Jane Noe—filed suit in this Court in March 2017.  Judge Mack moved to dismiss, Plaintiffs filed an amended complaint in June 2017.  After asking Plaintiffs to clarify their pleadings, this Court dismissed the case because Plaintiffs lacked Article III standing.  *Freedom from Religion Found., Inc. v. Mack*, 2018 WL 6981153, at \*5 (S.D. Tex. Sept. 27, 2018) (Ex. C).  This Court also denied Plaintiffs' motion to amend the judgment:  "After more than a year and a half of litigation in the case that Plaintiffs chose to prosecute, and after the entry of a Final Judgment, it is too late to start over."  Order at 1–2, *Freedom from Religion Found., Inc. v. Mack*, No. 4:17-cv-00881 (S.D. Tex. Dec. 20, 2018), ECF No. 94 (Ex. D).

Still undeterred—after being unable to persuade the Texas State Commission on Judicial Conduct, the Texas Attorney General, or this Court to see things their way—Plaintiffs now seek a fourth bite at the apple, hoping to convince this Court to ignore the long historical tradition of judicial prayer and rule that Judge Mack's chaplaincy program violates the Establishment Clause.

The time has come—again—to bring an end to this futile attempt to expunge from public life traditions older than the Republic itself.

Judge Mack moves to dismiss their Complaint with prejudice.

### STATEMENT OF THE ISSUES

Judge Mack seeks dismissal on two grounds:

1. The Complaint should be dismissed under Rule 12(b)(1) for lack of jurisdiction because Plaintiffs lack standing.

2. The Complaint should be dismissed under Rule 12(b)(6) for failure to plausibly plead a violation of the Establishment Clause.

### SUMMARY OF THE ARGUMENT

Plaintiffs lack standing to sue Judge Mack for two reasons.  First, they do not face a cognizable injury in fact.  Observing an invocation with which one disagrees is not a cognizable harm, and Plaintiffs have explicitly disclaimed any fear of bias or retaliation against those who opt to leave the courtroom during the opening routine.  Second, any future harm is not "certainly impending."  Attorney Roe has not appeared before Judge Mack in over two years and cannot plausibly plead that he will appear before Judge Mack again in the future.  Accordingly, the Complaint should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

On the merits, Judge Mack's practice fully comports with the Establishment Clause. Comfortably fitting within a historical tradition embraced by jurists as eminent as John Jay, John Marshall, and Joseph Story, Judge Mack's practice is neither coercive nor discriminatory.  And the invocation is materially indistinguishable from the forms of legislative prayer that the Supreme Court has consistently upheld as constitutional.

**ARGUMENT**

**I.      This Court lacks subject-matter jurisdiction because Plaintiffs lack standing.**

Plaintiffs lack standing to invoke this Court's jurisdiction for two independent reasons. First, Plaintiffs' offense at observing prayers with which they disagree is not a cognizable injury in fact.   Second, even if such offense were a cognizable injury, Plaintiffs still could not seek prospective relief because they have not plausibly alleged with reasonable certainty any future appearances before Judge Mack.   As a result, this Court lacks subject-matter jurisdiction.

**A.      Plaintiffs have not pleaded a plausible injury in fact.**

Plaintiffs "bear[ ] the burden of establishing" that their Complaint meets "the irreducible constitutional minimum of standing."   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).   Plaintiffs must show that they "have suffered an 'injury in fact'"—that is, "an invasion of a legally protected interest."   *Id*. at 560.   That "invasion" must be both "concrete and particularized."   *Id*.   Unless Plaintiffs have affirmatively "supported" that "irreducible constitutional minimum," this Court cannot exert jurisdiction.   *Id*. at 560–61.

1.      A "concrete and particularized" injury does *not* include the offense or discomfort one experiences when viewing a distasteful practice.   In *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, the Supreme Court explained that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing."   454 U.S. 464, 485 (1982).   A "disagreement" with a practice that, in one's opinion, offends a "firm[ ] commit[ment] to the constitutional principle of separation of church and State" does not satisfy Article III's standing requirement because even "concrete adverseness" is not an "injury itself."   *Id*. at 485–86.

That bedrock principle has been widely applied to reject claims from offended observers, including (repeatedly) against the same plaintiff now before this Court—the Freedom From

Religion Foundation.  Indeed, this Court has applied *Valley Forge* to declare that the FFRF lacked standing to sue over "offense [at] the conduct of the government"—in that case, then-Governor Perry's promotion of a prayer rally.  *Freedom from Religion Found., Inc. v. Perry*, 2011 WL 3269339, at *5 (S.D. Tex. July 28, 2011) (Ex. E).

The Colorado Supreme Court reached a similar result, holding that FFRF could not challenge honorary governmental proclamations promoting prayer based on some ill-defined "psychological consequence."  *Hickenlooper v. Freedom from Religion Found., Inc.*, 338 P.3d 1002, 1009 (Colo. 2014).  "[E]xpos[ure] to unavoidable and extensive media coverage revealing the existence of [ ] honorary proclamations" promoting prayer did not constitute an injury in fact. *Id.*  In the absence of coercion or discrimination, Plaintiffs "fail to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees."  *Id.* (quoting *Valley Forge*, 454 U.S. at 485).

2. *Valley Forge* and its progeny confirm that this Court lacks jurisdiction because Plaintiffs have not alleged any cognizable injury in fact.  Instead, Plaintiffs' primary allegation is that they *disapprove* of Judge Mack's practice of opening court with prayer.  Plaintiff Roe "objects" to the practice, which "violates [his] sincerely held beliefs."  Compl. ¶¶ 9, 86 ("Attorney Roe decided that he no longer wished to compromise *his* sincerely held beliefs by continuing to participate in Judge Mack's courtroom-prayer practice.") (emphasis added).

Those supposed injuries to personal sensibilities, however, are exactly the type of "psychological consequence[s]" that *Valley Forge* declared insufficient to confer Article III standing.  454 U.S. at 485.  Plaintiffs' allegations amount to a generalized grievance "produced by observation of conduct with which one disagrees"—in other words, no constitutional injury at all.

*Id.*  The fact that Plaintiffs *strongly* object to Judge Mack's practice carries no relevance, regardless of their "sincerely held beliefs."  Compl. ¶¶ 9, 86; *see Valley Forge*, 454 U.S. at 485–86.

3.    Nor can Plaintiffs manufacture standing by pointing to any example of a discriminatory practice.  Indeed, Plaintiffs have explicitly *disclaimed* any such accusation.  FFRF sent Judge Mack a letter, which it attached to its Complaint, stating that FFRF is "*not claiming that you are actually biased* against those who choose not to participate in your courtroom prayers."  Compl. Ex. D, at 5 (emphasis added).  Plaintiffs further acknowledge Judge Mack's policy that declining to attend the opening invocation will not affect the disposition of anyone's case:  "those opposed to prayer may leave the courtroom without affecting the outcome of their cases."  Compl. ¶¶ 66, 76–77; *see* Compl. ¶ 34 ("If any of you are offended by [the prayer] you can leave into the hallway and your case will not be affected.").

4.    To be sure, Plaintiff Roe speculates that Judge Mack might one day exhibit bias against those who decline to attend the invocation.  Compl. ¶¶ 9, 73–75, 85–86.

But in light of Judge Mack's unequivocal promise that nonattendance will not affect anyone's case, Compl. ¶¶ 34, 66, Plaintiffs' unfounded intimations that Judge Mack might exhibit bias against those declining to attend the invocation is not plausible under Rule 8.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) ("As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).  Not only do Plaintiffs fail to identify even a single instance of Judge Mack exhibiting such bias, but they explicitly declined to even *accuse* Judge Mack of bias:  "Please note that *we are not claiming that you are actually biased* against those who choose not to participate in your courtroom prayers." Compl. Ex. D, at 5 (emphasis added).

5.      Finally, Plaintiffs in this case have failed to plausibly plead that they are coerced to participate in the practice they find objectionable.  They do not allege that attending the invocation is actually mandatory.   Indeed, the Complaint repeatedly acknowledges that attendance is completely voluntary:   "you are not required to be present or participate," Compl. ¶ 76 (capitalization altered); "those opposed to prayer may leave the courtroom without affecting the outcome of their cases," Compl. ¶ 66; "[i]f any of you are offended . . . you can leave into the hallway and your case will not be affected."  Compl. ¶ 34.

Instead, Plaintiffs claim that they attended the invocation against their will because they speculated that their failure to do so would result in some future harm.  Compl. ¶¶ 9, 85–86.  But the Supreme Court has expressly rejected similar attempts to manufacture standing.  In *Clapper v. Amnesty International USA*, the Court held that plaintiffs' decision to incur "certain costs as a reasonable reaction to a risk of harm" was insufficient to create standing.  568 U.S. 398, 416 (2013).  "In other words, [plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Id*. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear."  *Id*.

So too here.  Implausible allegations of bias do not satisfy the injury-in-fact requirement, so Plaintiff Roe's efforts to avoid that implausible harm (first, by remaining in the courtroom and now by "no longer represent[ing] clients before Judge Mack," Compl. ¶¶ 9, 83, 85–88) also do not support standing.

**B.      Plaintiffs have not adequately alleged that any harm is certainly impending— and they cannot plausibly allege that they will appear before Judge Mack again.**

To obtain the prospective declaratory relief that he seeks, Plaintiff Roe must plausibly allege that he faces future harm and that that harm is "certainly impending."  *Crane v. Johnson*,

783 F.3d 244, 251 (5th Cir. 2015).  In this case, that requires at least some "certainly impending" appearance before Judge Mack.  Plaintiff Roe has not made that allegation—nor could he.  Indeed, Plaintiff Roe has made the opposite allegation—he has not appeared before Judge Mack in over two years.  Compl. ¶¶ 86–88.

It is well settled that prospective relief against judges is generally unavailable because a plaintiff usually cannot establish that he will appear before that judge in the future.  As the en banc Fifth Circuit put it, "plaintiffs lack standing to seek prospective relief against judges because the likelihood of future encounters is speculative."  *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1286 (5th Cir. 1992) (en banc).  Other courts have similarly held that speculative future encounters are insufficient to confer standing.  *E.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983) (holding that a plaintiff lacked standing to pursue injunctive relief against the use of chokeholds by the police for failure to allege that he would have another encounter with the police and that such an encounter would result in another chokehold).

Even when a plaintiff alleges a likelihood of appearing before the same judge in the future, courts have consistently found no standing.  For example, in *Henok v. Kessler*, the plaintiff lacked standing to seek injunctive relief against a judge's use of a Bible in court once that judge was no longer assigned to the plaintiff's case.  78 F. Supp. 3d 452, 463–64 (D.D.C. 2015), *aff'd*, 2015 WL 5210518 (D.C. Cir. Aug. 12, 2015).  Although the plaintiff alleged that the defendant judge "would likely hear an emergency motion in [the] case because [the defendant judge] is familiar with the matter," the court considered that concern "wholly speculative."  *Id.* at 464.  "[S]peculat[ion] regarding future interactions with judges" does not support standing to seek prospective relief.  *Id.*

This Court has also dismissed a similar challenge on mootness grounds.  In *Medina v. Devine*, the plaintiff, a litigant who appeared before Judge Devine in state court, sought a federal

injunction against the display of religious pictures in and near Judge Devine's courtroom.  146 F.3d 868 (5th Cir. 1998).[4]  This Court dismissed the case as moot because the plaintiff's state-court case was "no longer pending before Judge Devine."  Memo. & Order of Dismissal at 10–11, *Medina v. Devine*, No. 4:96-cv-02485 (S.D. Tex. Apr. 2, 1997), ECF No. 44 (Ex. F).[5]  Without a "reasonable expectation that the [plaintiffs] would file another suit that would be assigned to Judge Devine and be tried in his courtroom," the Court lacked jurisdiction.  *Id.* at 11–12.

In short, the mere possibility of appearing before a particular judge in the future is insufficient to confer standing—even if the plaintiff alleges that there is a high likelihood of such an appearance.  That principle confirms that no Plaintiff in this case has standing:

***John Roe***.  Plaintiff Roe alleges that he "has appeared in Judge Mack's courtroom at least 20 times," including once in December 2016 and three times in 2017.  Compl. ¶¶ 8, 81, 83, 84 ("Roe has been present in Judge Mack's courtroom during the revised, post-spring 2015 prayer practice on many occasions").  But that is insufficient.  Indeed, Plaintiff Roe further alleged that he has not appeared in Judge Mack's courtroom in over two years.  Compl. ¶¶ 85–87 ("Attorney Roe has elected to no longer represent clients before Judge Mack.").  He has gone so far as "to decline business" and steer clients to district court, "despite the higher filing fees, higher service fees, and the generally slower docket"—all "in order to avoid appearing in Judge Mack's courtroom."  Compl. ¶¶ 87–88.  Far from alleging a pending case that will require him to imminently appear before Judge Mack, Mr. Roe instead has alleged that he has successfully avoided Judge Mack's courtroom for two years.  *Society of Separationists*, *Henok*, and *Medina* all require dismissal for lack of jurisdiction over Plaintiff Roe's claims.

---

[4]  Judge Devine eventually became Justice Devine of the Texas Supreme Court.

[5]  Pin cites to this document are to the ECF stamp, because the numbering at the bottom of the page appears to be inaccurate.

**FFRF**.  FFRF lacks associational standing.  FFRF can maintain such standing "only if its members would have standing in their own right."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65–66 (1997); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  Because the Plaintiff Roe does not have standing, FFRF also lacks standing.  *Hunt*, 432 U.S. at 343.[6]

Accordingly, the Complaint should be dismissed for lack of subject-matter jurisdiction.[7]

## II.    Judge Mack's opening routine—including the brief invocations presented by the volunteer chaplains—is constitutional.

If the Court reaches the merits, the Complaint should be dismissed for failure to state a claim.  Judge Mack's practice tracks longstanding historical tradition.  The invocations are voluntary, and his practice is inclusive, not discriminatory.  It therefore comports with the Establishment Clause.

In analyzing the constitutionality of legislative chaplaincies, which present similar questions, the Supreme Court has found it "unnecessary" to apply older Establishment Clause tests, like the *Lemon* test, and has instead adopted a historical approach.  *See Town of Greece*, 572 U.S. at 575–76; *Marsh v. Chambers*, 463 U.S. 783, 786–92 (1983).  Indeed, as the Supreme Court recently explained in *American Legion v. American Humanist Ass'n*:

> The practice begun by the First Congress stands out as an example of respect and tolerance for differing views, an honest endeavor to achieve inclusivity and

---

[6]  Moreover, the Complaint fails to allege that Plaintiff Roe joined FFRF before he first observed Judge Mack's opening routine.  Accordingly, even if Plaintiff Roe had standing (he does not), FFRF would still lack associational standing.  *See Natural Arch & Bridge Soc'y v. Alston*, 209 F. Supp. 2d 1207, 1219 (D. Utah 2002) ("because [individual plaintiff] was not a member of [the association] when [the incidents at issue] occurred," his "alleged injury cannot be imputed to the association for purposes of standing").

[7]  To the extent Plaintiffs base their claims on "Judge Mack's Original Courtroom-Prayer Practice," Compl. ¶¶ 32–41, rather than his current practice, their claims are moot.  Requests for prospective relief against practices that have ceased are moot, and therefore not justiciable in federal court.  *See Stauffer v. Gearhart*, 741 F.3d 574, 583 & n.6 (5th Cir. 2014) (claim for injunctive and declaratory relief rendered moot by change in challenged policy).  Plaintiffs allege that Judge Mack's practices have changed over time, but they also contend that his "revised practice . . . has remained largely consistent ever since" its spring 2015 adoption.  Compl. ¶ 65.  There is no allegation that Judge Mack will revert to his previous practices—and Plaintiffs do not request any retrospective relief.

> nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans.  Where categories of monuments, symbols, and *practices with a longstanding history follow in that tradition, they are likewise constitutional*.

139 S. Ct. 2067, 2089 (2019) (plurality) (emphasis added); *see id*. at 2092 (Kavanaugh, J., concurring) ("In the first category of cases"—those involving "religious speech at government events"—"the Court has relied on history and tradition and upheld various religious symbols on government property and religious speech at government events") (citing *Marsh*, 463 U.S. at 787–92, 795, *Van Orden v. Perry*, 545 U.S. 677, 686–90 (2005) (plurality), and *Town of Greece*, 572 U.S. at 575–78).  There is no reason to treat judicial chaplaincies any differently.  *See* Tex. Att'y Gen. Op. No. KP-0109, 2016 WL 4414588, at *3 (Ex. B).[8]

### A.    Extensive historical tradition supports Judge Mack and his opening routine.

The United States and the State of Texas both have a long tradition of governmental prayer that began before and continued through and after the ratification of their respective Constitutions.  Because Judge Mack's "prayer practice . . . fits within th[at] tradition," it necessarily complies with the Establishment Clause.  *Town of Greece*, 572 U.S. at 577.

### 1.    Our Nation has a deep and rich history of judicial prayer.

Prayer is common in courtrooms—and it has been since the Founding.  From the opening cry to the final opinion, judicial proceedings have frequently included not only religious expression generally, but prayers in particular.  As the Supreme Court explained in *Marsh v. Chambers*:

> The opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country. . . . In the

---

[8]    In addition to being bare legal conclusions, paragraphs 91–95 of the Complaint should also be disregarded because they state the *wrong* legal conclusions—that Judge Mack's practice violates the *Lemon* test.  As just explained, the *Lemon* test does not apply to governmental prayer cases.  The endorsement test allegations, *see* Compl. ¶¶ 91–92, 95, are similarly misguided.  *See Lynch v. Donnelly*, 465 U.S. 668, 689 (1984) (O'Connor, J., concurring) (the endorsement test simply "clarifies the *Lemon* test as an analytical device").

For the same reason, pre–*Town of Greece* cases that apply the *Lemon* test in the governmental-prayer context are not persuasive.  *See*, *e.g.*, *N.C. Civil Liberties Union Legal Found. v. Constangy*, 947 F.2d 1145, 1147 (4th Cir. 1991) (applying the *Lemon* test); *see also* Tex. Att'y Gen. Op. No. KP-0109, 2016 WL 4414588, at *2–3 (Ex. B) (distinguishing *Constangy* from this case).

very courtrooms in which the United States District Judge and later three Circuit Judges heard and decided this case, the proceedings opened with an announcement that concluded, "God save the United States and this Honorable Court."  The same invocation occurs at all sessions of this Court.

463 U.S. at 786.  The Supreme Court has "opened its sessions with the prayer, 'God save the United States and this Honorable Court'" since the time of Chief Justice John Marshall.  *McCreary Cty. v. ACLU of Ky.*, 545 U.S. 844, 886 (2005) (Scalia, J., dissenting) (citing 1 Charles Warren, *The Supreme Court in United States History* 469 (rev. ed. 1926) (Ex. G)).

Texas courts have similar traditions.  In the Supreme Court of Texas, the marshal's opening includes "God save the State of Texas, this Honorable Court."  *E.g.*, Transcript of Oral Argument, *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494 (Tex. 2015) (Nos. 13-1026, 14-0109), 2015 WL 1648039 (Ex. H).  The judges' bench in the old Texas Supreme Court Building, which "served as the core of the Texas judicial system from 1888 to 1959," is inscribed with a Latin phrase that translates to "Just as to our fathers, may God be to us."  Texas State Preservation Board, *The Texas Capitol:  A Self-Guided Tour* 3, https://tspb.texas.gov/plan/brochures/doc/in_print/capitol/capitol_brochure.pdf (Ex. I); *see also Van Orden v. Perry*, 351 F.3d 173, 175–76 (5th Cir. 2003) (translating "Sicut Patribus, Sit Deus Nobis" to "As God was to our fathers, may He also be to us"), *aff'd*, 545 U.S. 677 (2005).

This tradition extends beyond prayers from court employees to also include prayers from visiting chaplains.  For instance, before the opening session of the new Circuit Court for the District of Connecticut, District Judge Richard Law asked Chief Justice Jay how he should prepare, including "whether [the justices riding circuit] would wish to have a Clerg[y]man attend as Chapl[a]in, as has been generally the Custom in the New England States, upon such Occasions." 2 *The Documentary History of the Supreme Court of the United States* 11 (Maeva Marcus ed., 1988) (Ex. J).  Wishing "to respect ancient usages in all Cases where Deviations from them are

not of essential importance," Chief Justice Jay responded that "[t]he custom in New England of a clergyman's attending, should in my opinion be observed and continued." *Id.* at 13.

That practice was mirrored elsewhere.  In 1790, after a Massachusetts grand jury was impaneled, "a charge was given them by the Chief Justice and the Throne of Grace addressed in Prayer by the Rev. Dr. Howard," a Congregational minister.  Warren, *Supreme Court* at 59 n.1 (Ex. G); *see also* 2 *Documentary History* at 60 (Ex. J).  In New Hampshire in 1791, "[a]fter the customary proclamations were made and the Grand Jury sworn . . . the throne of Grace was addressed by the Rev. Dr. Haven"—a Congregational minister from Portsmouth.  2 *Documentary History* at 192 (Ex. J).  At the November 1792 opening of the Circuit Court of the District of Rhode Island, "the Throne of Grace was addressed in Prayer by the Rev. Dr. Hitchcock," a Congregational minister in Providence.  *Id.* at 331.

The tradition of opening court sessions with an invocation continued well beyond the early years of the Republic.  *See*, *e.g.*, *Open Court with Prayer:  Judge Holton Presides in the Circuit Court at Brookhaven*, Macon Beacon (Sept. 18, 1914), https://chroniclingamerica.loc.gov/data/batches /msar_applejack_ver01/data/sn83016943/00295877790/1914091801/1164.pdf (Ex. K) ("Prayer was C, Rev. W.P. Morgan being asked to invoke the blessings of the Deity."); *Circuit Court:  September Term Convenes with Judge Cook on the Bench*, Hopkinsville Kentuckian (Sept. 25, 1900), https://chroniclingamerica.loc.gov/data/batches/kyu_inxs_ver01/data/sn86069395/00175046136 /1900092501/0631.pdf (Ex. L) ("Judge Cook opened court with prayer."); *Editorial Brevities*, Anti-Slavery Bugle (June 14, 1851), https://chroniclingamerica.loc.gov/data/batches/ohi_desdemona _ver01/data/sn83035487/00237283776/1851061401/0308.pdf (Ex. M) ("Judge Howe of Wisconsin opens his court with prayer.").

In part, the practice has persisted because prayer has long played a significant role in promoting truthfulness among jurors and witnesses.  Today, before voir dire, prospective jurors take an oath that includes a prayer for divine assistance: "so help you God."  Tex. R. Civ. P. 226. Then, once empaneled, the jurors chosen take a similar oath and offer the same prayer before trial. Tex. R. Civ. P. 236 ("So help you God.").  During trial, witnesses frequently end their oaths with the phrase "so help me God."  *Zorach v. Clauson*, 343 U.S. 306, 312–13 (1952) (explaining that such oaths do not violate the Establishment Clause).  As Chief Justice John Jay explained to a Vermont grand jury in 1792, this prayer ensures that testimony is "given under those solemn obligations which an appeal to the God of Truth impose" because "if oaths should cease to be held sacred," perjury would undermine testimonial evidence and threaten "our dearest and most valuable Rights."  2 *Documentary History* at 284 (Ex. J).

After criminal trials, judges have traditionally prayed for defendants facing a sentence of death.  Historically, English courts concluded death sentences with the phrase "and may the Almighty God have mercy on your souls."  Akhil Reed Amar, *The Bill of Rights as a Constitution*, 100 Yale L.J. 1131, 1182 (1991) (Ex. N).  This tradition carried over to the United States.  In 1791, mere months after South Carolina disestablished Protestantism as the official religion, the Chief Justice of the Constitutional Court of Chancery recommended that a defendant sentenced to death "employ that little interval of life which remained, in making his peace with that God whose law he had offended" and "prayed that the Lord might have mercy on his soul."  *State v. Washington*, 1 S.C.L. (1 Bay) 120, 156–57 (S.C. 1791) (Ex. O).

In 1834, Justice Joseph Story, a noted scholar of the Constitution, included religious messages and his "earnest prayers" when pronouncing his sentence on convicted pirates:

> The sentence is . . . that you, and each of you, be therefore severally hanged by the neck until you are severally dead. . . .  I earnestly recommend to each of you to

employ the intermediate period in sober reflections upon your past life and conduct, and by prayer and penitence, and religious exercise, to seek the favor and forgiveness of Almighty God for any sins and crimes which you may have committed; and for this purpose I earnestly recommend to you, and to each of you, to seek the aid and assistance of the ministers of our holy religion of the denomination of Christians to which you severally belong.  And in bidding you, so far as I can presume to know, an eternal farewell, *I offer up my earnest prayers that Almighty God may in his infinite goodness have mercy on your souls*.

*United States v. Gibert*, 25 F. Cas. 1287, 1317 (C.C.D. Mass. 1834) (Story, J.) (Ex. P) (emphasis added).

Finally, after live proceedings have concluded, American courts have long included prayers in their written opinions.  In 1793, Justice Iredell included the following prayer in his opinion in *Chisolm v. Georgia*:

I pray to God, that if the Attorney General's doctrine, as to the law, be established by the judgment of this Court, all the good he predicts from it may take place, and none of the evils with which, I have the concern to say, it appears to me to be pregnant.

2 U.S. (2 Dall.) 419, 450 (1793) (Iredell, J., dissenting); *see also Pennsylvania v. West Virginia*, 262 U.S. 553, 605 (1923) (McReynolds, J., dissenting) (quoting Justice Iredell's prayer and concluding, "A like prayer seems not inappropriate here and now").  No less a judicial icon than Chief Justice John Marshall, writing in 1805, included a prayer, partially borrowed from Lord Coke, that the union binding the states together would not dissolve:

Our general government is composed of a number of distinct and independent states, uniting under one head by mutual consent for common benefit.  But an event may happen (which every good man should join with my Lord Coke in his devout prayer, "that God of his infinite goodness and mercy may prevent,")—time may come when this bond of union may be broken, this confederacy dissolved, and these sovereignties become altogether and completely independent.

*M'Ilvanie v. Coxe's Lessee*, 6 U.S. (2 Cranch) 280, 312 (1805) (Marshall, C.J.) (quoting *Calvin's Case* (1608) 77 Eng. Rep. 379 (K.B.) 409 (Ex. Q) (praying that "Almighty God of his infinite

goodness and mercy [would] divert"—that is, prevent—the dissolution of England, Scotland, and Ireland)).

Considering this history, "the prayer practice in [Judge Mack's court] fits within the tradition long followed" by federal and state courts. *Town of Greece*, 572 U.S. at 577.  As a result, it necessarily comports with the Establishment Clause.  "Where 'history shows that the specific practice is permitted,' we typically need go no further; the Establishment Clause claim fails." *New Doe Child #1 v. United States*, 901 F.3d 1015, 1021 (8th Cir. 2018) (quoting *Town of Greece*, 572 U.S. at 577).

> **2.     Our Nation has a similarly deep and rich history of legislative and executive prayer—as numerous courts, including the U.S. Supreme Court, have recognized.**

The other branches also have long traditions of prayer.  "[T]he practice of opening sessions with prayer has continued without interruption ever since that early session of Congress." *Marsh*, 463 U.S. at 788.  The First Congress "authorized the appointment of paid chaplains" mere days before agreeing on the language of the First Amendment. *Id.*; *see also Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017) (en banc) ("Legislative prayer . . . 'has become part of our heritage and tradition, part of our expressive idiom, similar to the Pledge of Allegiance, inaugural prayer, or the recitation of "God save the United States and this honorable Court" at the opening of [the Supreme Court's (and Sixth Circuit's) ] sessions.'") (final alteration in original) (quoting *Town of Greece*, 572 U.S. at 587 (Kennedy, J.)).

And the Executive Branch also has a deep tradition of chaplaincies.  Since 1937—when the President's inaugural ceremony was moved to the East Portico—"each of the Presidential inaugurations has featured at least two prayers delivered by clergymen invited by the President." *Newdow v. Bush*, 355 F. Supp. 2d 265, 286–88 (D.D.C. 2005) ("These prayers have frequently

been sectarian, with references to 'Jesus Christ our Lord' and 'the Father, . . . the Son, and . . . the Holy Ghost.'") (alterations in original).

But, to be certain, 1937 did not mark the beginning of the inaugural-prayer practice. Indeed, that the tradition of an "inaugural prayer can be traced to the founding of this country." *Id*.  And the clergy weren't the only ones offering prayers—"at the same time that an inaugural prayer was being given by clergy at a church or at the Capitol, each of the Presidents (including several Founding Fathers) was also offering 'supplications' to an Almighty Being in his inaugural address":

> President Washington, for example, stated that "[i]t would be peculiarly improper to omit in this first official act my fervent supplications to that Almighty Being who rules over the universe . . . that His benediction may consecrate to the liberties and happiness of the people of the United States a Government instituted by themselves for these essential purposes."

*Id*. (alterations in original); *see also Elk Grove*, 542 U.S. at 26 (Rehnquist, C.J., concurring in the judgment) (discussing how Presidents, beginning with George Washington, have added "So help me God" to their inaugural oaths); *Zorach*, 343 U.S. at 312–13 (discussing "the appeals to the Almighty in the messages of the Chief Executive").

Like the history of judicial prayer, the tradition of prayer in the other branches of government demonstrates that official prayer does not violate the Establishment Clause.  Plaintiffs present no reason to believe that Judge Mack's practice falls outside of that historical tradition.

### B.  Judge Mack's practice is voluntary—not coercive.

The Complaint implausibly asserts that "Judge Mack has coerced Attorney Roe and others to participate in his religious practice," Compl. ¶ 96—but it contains no factual allegations supporting that assertion.  That is, despite baldly asserting that "he has felt compelled to remain in the courtroom . . . out of concern that leaving would bias Judge Mack against him and his clients," Compl. ¶¶ 9, 85–86—the Complaint contains no facts to support Plaintiff Roe's "concern" of

"bias."  If anything, the Complaint affirmatively establishes the voluntary nature of Judge Mack's practice.

1.      When the opening routine first began, Judge Mack made clear that anyone "c[ould] leave into the hallway and your case *will not be affected*."  Compl. ¶ 34 (emphasis added).  And under the "revised" practice, the bailiff is instructed "to include a statement that those opposed to prayer may leave the courtroom *without affecting the outcome of their cases*."  Compl. ¶ 66 (emphasis added); *see also* Compl. ¶ 76 ("You are not required to be present or participate [in the opening routine].") (capitalization altered).  Not only does the Complaint provide no reason to question the veracity of Judge Mack's public statements, but Plaintiffs themselves have taken the position that they "are not claiming that [Judge Mack] is actually biased against those who choose not to participate in [his] courtroom prayers."  Compl. Ex. D, at 5.  Moreover, it "is significant here, as in *Town of Greece*"—and in *Bormuth*—"that [n]othing in the record suggests that members of the public are dissuaded from leaving the meeting room during the prayer."  870 F.3d at 516.

2.      Plaintiffs claim that they are "asked to participate, or show obeisance, by bowing their heads."  Compl. ¶ 70.  These "polite requests, however, do not coerce prayer."  *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 526 (5th Cir. 2017); *see also Bormuth*, 870 F.3d at 517 ("[W]e do not agree that soliciting adult members of the public to assist in solemnizing the meetings by rising and remaining quiet in a reverent position is coercive.  These 'commonplace' and 'reflexive' requests—whether from ministers or elected individuals following their own faith's normative cues—do not alone mandate participation, especially as most are preceded with a polite 'please.'") (quoting *Town of Greece*, 572 U.S. at 599 (Alito, J., concurring)).  Any subjective concerns about "social pressures" do not amount to coercion.  *Town of Greece*, 572 U.S. 577–78.  In the

legislative-prayer context, the Supreme Court held that the fear of "offending the representatives who sponsor the prayer and will vote on matters citizens bring before the board" was not coercive. *Id.*; *see also Bormuth*, 870 F.3d at 517. And such "'subtle coercive pressures' . . . do not remotely approach 'actual legal coercion.'" *Bormuth*, 870 F.3d at 519 (quoting *Town of Greece*, 572 U.S. at 610).

Attorney Roe also contends that on "one occasion" the clerk of court instructed him to "enter[] the courtroom to participate in the prayer." Compl. ¶ 85 ("This was not framed as a request, but as a demand."). Even if the clerk's actions—which are inconsistent with Judge Mack's instructions, Compl. ¶ 66—were attributable to Judge Mack, that still would not help Plaintiffs because they seek only prospective relief. *See Fields v. Speaker of Pa. House of Representatives*, 2019 WL 3979588, at *1, 13–14 (3d Cir. Aug. 23, 2019) (Ex. R) ("We hold that the single incident involving pressure from a security guard is moot.").

3.      Nor does the offense that Plaintiffs take to Judge Mack's practice "equate to coercion"—"[a]dults often encounter speech they find disagreeable; and an Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views." *Town of Greece*, 572 U.S. at 589 (Kennedy, J.); *see Fields*, 2019 WL 3979588, at *13–15 (Ex. R) ("That Fields and Rhoades felt offended by the prayers does not aid their claim of coercion. '[L]egislative bodies do not engage in impermissible coercion merely by exposing constituents to prayer they would rather not hear and in which they need not participate.'") (alteration in original) (quoting *Town of Greece*, 572 U.S. at 590 (Kennedy, J.)).

## C.      Judge Mack's practice is inclusive—not discriminatory.

Plaintiffs do not allege that Judge Mack's practice is discriminatory. On the face of the Complaint, there is no reason to doubt that Judge Mack "maintains a policy of nondiscrimination." *Town of Greece*, 572 U.S. at 585–86.

The Complaint does allege that all of the prayers observed by Plaintiff Roe or "brought to the attention of FFRF," "have been sectarian prayers, delivered by Christians, in the name of Jesus." Compl. ¶ 82. But none of those allegations call into question the constitutionality of Judge Mack's practice.

1.     To begin, the "sectarian" nature of the prayers is irrelevant to the constitutional analysis. As the Supreme Court has explained,

> To hold that invocations must be nonsectarian would force the legislatures that sponsor prayers and the courts that are asked to decide these cases to act as supervisors and censors of religious speech, a rule that would involve government in religious matters to a far greater degree than is the case under the town's current practice of neither editing or approving prayers in advance nor criticizing their content after the fact.

*Town of Greece*, 572 U.S. at 581; *see McCarty*, 851 F.3d at 529 ("[T]he Constitution does not require invocations to be non-sectarian."). More bluntly, "religious displays or speech need not be limited to that which a 'judge considers to be nonsectarian.' As the Court has explained. '[a]n insistence on nonsectarian' religious speech is inconsistent with our Nation's history and traditions." *Am. Legion*, 139 S. Ct. 2096 (Thomas, J., concurring) (alteration in original; citation omitted) (quoting *Town of Greece*, 572 U.S. at 578–80, 582). "Any such effort would find courts 'trolling through . . . religious beliefs' to decide what speech is sufficiently generic." *Id*. at 2096–27 & n.3 ("the 'sectarian' test 'has a shameful pedigree'") (quoting *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality)).

2.     Nor is the fact that the prayers are "delivered by Christians, in the name of Jesus" constitutionally significant. Compl. ¶ 82. Even assuming this represented a statistically significant overrepresentation of Christians—which Plaintiffs have not pleaded—it would not establish a discriminatory motive. *See Town of Greece*, 572 U.S. at 584–85. "It is clear from *Marsh* and

*Town of Greece* that creed-specific prayers alone do not violate the First Amendment." *Bormuth*, 870 F.3d at 513.  As the Sixth Circuit recently explained,

> [T]he town's composition of nearly all Christians did not "reflect an aversion or bias on the part of town leaders against minority faiths.  So long as the town maintains a policy of nondiscrimination, the Constitution does not require it to search beyond its borders for non-Christian prayer givers in an effort to achieve religious balancing."

*Id*. at 507 (quoting *Town of Greece*, 572 U.S. at 585–86).  "As *Marsh* itself made clear, this Court cannot ascribe an impermissible motive to the legislature in its selection of clergy merely based on the disproportionate (or even exclusive) representation of one faith behind the invocational podium."  *Pelphrey v. Cobb Cty.*, 410 F. Supp. 2d 1324, 1346 (N.D. Ga. 2006).

* * *

Plaintiffs cannot establish that Judge Mack's practice of allowing invocations at the beginning of court proceedings—a routine which tracks the longstanding practice of American courts from the very first days of the Republic—violates the Establishment Clause.  Judge Mack's opening routine is the archetypal "tradition long followed" which the Supreme Court has held not to violate the Establishment Clause.  *Town of Greece*, 572 U.S. at 577.  FFRF may try—and try again, and again—to escape the overwhelming weight of history, but simply cannot prevail under the Supreme Court's Establishment Clause jurisprudence.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated:   September 4, 2019

Respectfully submitted,

/s/ Allyson N. Ho

Michael D. Berry
   Texas Bar No. 24085835
   S.D. of Texas Bar No. 2412537
Hiram S. Sasser III
   Texas Bar No. 24039157
   S.D. of Texas Bar No. 632649
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, Texas  75075
Telephone:  (972) 941-4444
Facsimile:  (972) 423-6162
*mberry@firstliberty.org*
*hsasser@firstliberty.org*

Allyson N. Ho
   *Attorney-in-Charge*
   Texas Bar No. 24033667
   S.D. of Texas Bar No. 1024306
Bradley G. Hubbard
   (motion for admission pending)
   Texas State Bar No. 24094710
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile: (214) 571-2900
*aho@gibsondunn.com*
*bhubbard@gibsondunn.com*

John S. Ehrett
   (motion for admission *pro hac vice* pending)
   Virginia Bar No. 93486
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, DC  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
*jehrett@gibsondunn.com*

COUNSEL FOR DEFENDANT JUDGE WAYNE MACK
IN HIS INDIVIDUAL CAPACITY

CERTIFICATE OF SERVICE

I certify that, on September 4, 2019, a true and correct copy of the foregoing Motion to

Dismiss and Brief in Support was served by ECF on all counsel of record.


*/s/ Allyson N. Ho*
Allyson N. Ho