IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., and JOHN ROE, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | CIVIL ACTION NO. 4:19-cv-1934 |
| JUDGE WAYNE MACK, in his personal capacity and in his official judicial capacity on behalf of the State of Texas, | § § § § | |
| *Defendant*. | | |

## REPLY BRIEF IN SUPPORT OF JUDGE MACK'S MOTION TO DISMISS

Table of Authorities ............................................................................................ iii

Introduction............................................................................................................1

Argument ...............................................................................................................2

    I.    Plaintiffs lack standing to maintain this suit. ....................................2

        A.    Plaintiffs lack standing to seek prospective relief against Judge Mack in his individual capacity. ...........................................3

            1.    Plaintiffs have not adequately alleged that any harm is certainly impending—and they cannot plausibly allege that they will appear before Judge Mack again. ...............................3

            2.    Attorney Roe's decision to decline representing clients before Judge Mack is insufficient to confer standing—the "hypothetical future harm" he seeks to avoid is not certainly impending. ................................................................6

        B.    Observing a prayer is not an injury in fact..............................8

    II.    Judge Mack's ceremonial invocation practice is constitutional. .....................10

        A.    Plaintiffs do not rebut the extensive history of courtroom invocations. ...................................................................11

        B.    Judge Mack's practice is voluntary, inclusive, and non-coercive. .......15

Conclusion ...........................................................................................................15

Certificate of Service ...........................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ala. Freethought Ass'n v. Moore*,
 893 F. Supp. 1522 (N.D. Ala. 1995) .................................................................................4

*Am. Humanist Ass'n v. McCarty*,
 851 F.3d 521 (5th Cir. 2017) ................................................................................... *passim*

*Am. Legion v. Am. Humanist Ass'n*,
 139 S. Ct. 2067 (2019) .......................................................................................1, 11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .......................................................................................8

*Bormuth v. Cty. of Jackson*,
 870 F.3d 494 (6th Cir. 2017) ...............................................................................13

*Briggs v. Mississippi*,
 331 F.3d 499 (5th Cir. 2003) ...............................................................................12

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) .......................................................................................2, 3, 6, 8

*Crane v. Johnson*,
 783 F.3d 244 (5th Cir. 2015) ................................................................................3

*Doe v. Beaumont Indep. Sch. Dist.*,
 240 F.3d 462 (5th Cir. 2001) ...............................................................................9, 10

*Doe v. Tangipahoa Parish Sch. Bd.*,
 494 F.3d 494 (5th Cir. 2007) ................................................................................9

*Freedom from Religion Found., Inc. v. Mack*,
 2018 WL 6981152 (S.D. Tex. Jan. 19, 2018) (Opp'n Ex. A) ....................................2, 6, 10, 11

*Freedom from Religion Found., Inc. v. Mack*,
 2018 WL 6981153 (S.D. Tex. Sept. 27, 2018) .................................................................2

*Freedom from Religion Found., Inc. v. Zielke*,
 845 F.2d 1463 (7th Cir. 1988) ................................................................................9

*Glass v. Paxton*,
 900 F.3d 233 (5th Cir. 2018) ................................................................................... *passim*

*Hummel v. St. Joseph Cty. Bd. of Comm'rs*,
 817 F.3d 1010 (7th Cir. 2016) ................................................................................5

*Hunt v. Wash. State Apple Advert. Comm'n*,
 432 U.S. 333 (1977) .......................................................................................5

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .......................................................................................5

*Lynch v. Donnelly*,
 465 U.S. 668 (1984) .......................................................................................11

Page(s)

*Marsh v. Chambers,*
    463 U.S. 783 (1983)......................................................................................11, 13

*N.C. Civil Liberties Union Legal Found. v. Constangy,*
    947 F.2d 1145 (4th Cir. 1991) ............................................................11, 12, 15

*Nat. Arch & Bridge Soc'y v. Alston,*
    209 F. Supp. 2d 1207 (D. Utah 2002)........................................................5

*Peters v. St. Joseph Servs. Corp.,*
    74 F. Supp. 3d 847 (S.D. Tex. 2015) .........................................................4

*Shea v. Brister,*
    26 F. Supp. 2d 943 (S.D. Tex. 1998) ......................................................3, 4

*Soc'y of Separationists, Inc. v. Herman,*
    959 F.2d 1283 (5th Cir. 1992) ................................................................3, 4

*Town of Greece v. Galloway,*
    572 U.S. 565 (2014)................................................................... *passim*

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982)................................................................................8, 9

*Van Orden v. Perry,*
    545 U.S. 677 (2005).....................................................................................11

*Warth v. Seldin,*
    422 U.S. 490 (1975)......................................................................................5

*Zimmerman v. City of Austin,*
    881 F.3d 378 (5th Cir. 2018) .................................................................1, 6

**Attorney General Opinion**

Tex. Att'y Gen. Op. No. KP-0109,
    2016 WL 4414588 (2016)...........................................................................11

**Other Authorities**

*25 Moonshiners Confess,*
    The Morning Tulsa Daily World (Apr. 30, 1922) ....................................14

*A Verified Dream,*
    Superior Times (June 7, 1879)...................................................................14

Cathy Gordon,
    *The Bench and the Bible: State District Judge Refuses to Leave His Faith at Courtroom Door,*
    Hou. Chron. (Nov. 23, 1985), 1985 WLNR 1247161 ............................14

*Circuit Court,*
    Herald & Tribune (Aug. 10, 1871) ...........................................................14

*Court Holds First Session,*
    St. Petersburg Times (July 30, 1996), 1996 WLNR 2378937 .................14

<u>Page(s)</u>

*Federal Court*,
  Daily Chieftain (Apr. 6, 1901) .................................................................................14

*Minister Turns Into Surprise Witness*,
  Hou. Chron. (Apr. 1, 1985), 1985 WLNR 1239288 ...................................................14

*Putnam*,
  Norwich Bull. (Oct. 9, 1919) .....................................................................................14

*St. Johnsbury*,
  Orleans Cty. Monitor (June 13, 1881) ........................................................................14

**INTRODUCTION**

Plaintiffs' Opposition is a glimpse back in time at another era of constitutional law—one before the Supreme Court decided *Town of Greece v. Galloway*, 572 U.S. 565 (2014), and *American Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019). In recent years, the Court has made abundantly clear that "the Establishment Clause must be interpreted 'by reference to historical practices and understandings.'" *Town of Greece*, 572 U.S. at 576. And where "established, religiously expressive . . . practices" are at issue, the "passage of time gives rise to a strong presumption of constitutionality." *Am. Legion*, 139 S. Ct. at 2085.

As demonstrated by the history Judge Mack cites, the practice of opening court proceedings with an invocation dates back to our Nation's Founding—and Judge Mack's practice undoubtedly "comports with our tradition." *Town of Greece*, 572 U.S. at 591–92; *see Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 526–27 (5th Cir. 2017) (affirming "history and tradition" test applies in cases involving "religious invocations at the opening, ceremonial phase of a local deliberative body's public meetings," regardless of whether the "invocation policy" at issue has a "unique history"). And Plaintiffs do not contest that Judge Mack provides everyone with an opportunity to avoid hearing the invocation. *Town of Greece*, 572 U.S. at 592 (upholding practice that "does not coerce participation by nonadherents"). Nor do Plaintiffs suggest that Judge Mack's practice is discriminatory. As a result, Judge Mack's opening invocation easily passes constitutional muster.

But this Court need not reach the merits, because Plaintiffs lack standing. As the Fifth Circuit has explained, "standing cannot be conferred by a self-inflicted injury," *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018)—and Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018). Nor does the January 2018 Order compel a different result. To begin, Judge Werlein subsequently vacated large portions

of that Order.  *See Freedom from Religion Found., Inc. v. Mack*, 2018 WL 6981153, at *2 n.10 (S.D. Tex. Sept. 27, 2018) (Ex. A).  More importantly, the conclusion reached in that Order—that Plaintiffs had standing because they "plausibly alleged a *reasonable concern* that conspicuously abstaining from Judge Mack's prayer practice would draw his attention to them in an unfavorable way," Opp'n Ex. A at 32 n.56 (emphasis added)—does not survive the Fifth Circuit's decision in *Glass*.  900 F.3d at 241 ("Parties' contention that they have standing because they incurred certain costs *as a reasonable reaction* to a risk of harm is unavailing") (emphasis added; quotation marks omitted); *see id.* (rejecting request "to confer standing on the basis that [plaintiff's] fears are 'objectively understandable and reasonable'"—a standard that "was already rejected in [*Clapper*]") (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

Plaintiffs' Opposition confirms that dismissal is warranted under Rules 12(b)(1) and 12(b)(6). Because amendment would be futile, the Court should dismiss the Complaint with prejudice.

ARGUMENT

## I.    Plaintiffs lack standing to maintain this suit.

Plaintiffs cannot seek prospective relief against Judge Mack because they have not suffered any certainly impending injury in fact.  As the Fifth Circuit has explained, it is "critical" to "identify the harm serving as the catalyst" for Plaintiffs' self-inflicted harm of forgoing business in Judge Mack's court.  *Glass*, 900 F.3d at 239.  Here, Plaintiffs have not plausibly pleaded—and cannot plausibly plead—that they face any "certainly impending" observation of Judge Mack's practice, let alone any "certainly impending" future punishment should Plaintiff Roe accept Judge Mack's invitation to "leave into the hallway."   Compl. ¶¶ 34, 66 ("those opposed to prayer may leave the courtroom without affecting the outcome of their cases").  Moreover, even if Plaintiffs could demonstrate a certainly impending appearance before Judge Mack, merely observing a voluntary prayer is not a cognizable injury.

**A.** **Plaintiffs lack standing to seek prospective relief against Judge Mack in his individual capacity.**

Plaintiffs' only requested relief against Judge Mack in his individual capacity is prospective—a judgment "declaring that Judge Mack's courtroom prayer practice violates the Establishment Clause." Compl. 18. But Plaintiffs lack standing to pursue prospective relief against Judge Mack's practice for two independent reasons. First, Plaintiffs have not plausibly alleged—and cannot plausibly allege—that they will appear before Judge Mack again. *See Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). Second, Plaintiffs' attempt to "manufacture standing" by turning down clients to avoid Judge Mack's courtroom—based on the groundless contention that declining to participate in the invocation "would bias Judge Mack against [Roe] and his clients," Compl. ¶ 85—is inconsistent with Fifth Circuit and Supreme Court precedent. *See Glass*, 900 F.3d at 239–42 (citing *Clapper*, 568 U.S. 398).

**1.** **Plaintiffs have not adequately alleged that any harm is certainly impending—and they cannot plausibly allege that they will appear before Judge Mack again.**

Standing to seek prospective relief against Judge Mack's practice requires, at a minimum, that Plaintiffs have "certainly impending" appearances before Judge Mack. *Crane*, 783 F.3d at 251. Plaintiffs cannot meet this high bar. "[B]ecause the likelihood of future encounters is speculative," Plaintiffs "lack standing to seek prospective relief" against Judge Mack. *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1286 (5th Cir. 1992) (en banc); *see Shea v. Brister*, 26 F. Supp. 2d 943, 945–46 (S.D. Tex. 1998) (applying *Herman* to attorney's challenge of then-Judge Brister's Ten Commandments display).

**John Roe.** Plaintiffs ask the Court to assume that John Roe, "a self-employed attorney who has regularly worked within Montgomery County since before Wayne Mack became a judge" and who "has appeared in Judge Mack's courtroom at least 20 times" will "be exposed to Judge

Mack's courtroom prayers" if he accepts cases falling under Judge Mack's jurisdiction. Compl. ¶¶ 8–9, 81–89; Opp'n 13.

This theory of harm is insufficient to confer standing. Plaintiffs cite only one case based on this theory, *Alabama Freethought Association v. Moore*, but the court there *dismissed* the plaintiff's courtroom-prayer challenge for *lack of standing*. 893 F. Supp. 1522, 1534 n.24 (N.D. Ala. 1995) ("the mere possibility that [plaintiff] would have been required to appear as a litigant in defendant's court is insufficient to confer standing on her"). Like much of Plaintiffs' authority, that case dismissed the plaintiff's complaint because there is no standing where, as here, a plaintiff's "alleged future injuries are speculative—even hypothetical—but certainly not imminent." *Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 854–55 (S.D. Tex. 2015) (finding no standing where plaintiff failed to "at least plausibly establish a 'certainly impending' or 'substantial' risk that she will be victimized."); *see also Shea*, 26 F. Supp. 2d at 945–46 (dismissing attorney's challenge to then-Judge Brister's Ten Commandments display for lack of standing: "That Shea might be required to appear as an attorney, litigant, or juror in Brister's courtroom anytime in the near future is certainly not 'imminent' and is hypothetical or conjectural") (citing *Herman*, 959 F.2d at 1285–86 ("This court and others have often held that plaintiffs lack standing to seek prospective relief against judges because the likelihood of future encounters is speculative.") (citing cases)). Plaintiffs have failed to plausibly allege imminent harm.

Moreover, even if the Complaint did support Plaintiffs' Opposition, dismissal still would be appropriate. That lawyers are more likely to appear in court (and before a judge) than the average citizen does not exempt lawyer-plaintiffs from having to plead a certainly impending court appearance. *See Shea*, 26 F. Supp. 2d at 945–46 (no standing where attorney "has no pending cases in Brister's court" because "the mere possibility that one of [attorney] Shea's cases might be

assigned to Judge Brister's Court, or that he might one day be a litigant or prospective juror in the case is entirely conjecture" and "too speculative to satisfy standing as a matter of law"); *see also Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016) (no "'real and immediate' threat" that lawyer who used a wheelchair would need to use ramps at a courthouse, which were allegedly unusable when it snowed, despite the "significant snowfall in most winters"). Plaintiffs' argument stretches the "certainly impending" requirement "beyond the breaking point" by alleging "only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within [their] own control." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992); *see also Glass*, 900 F.3d at 242 (no standing absent "any allegation of certainty about [third parties'] future decisions").

**FFRF**. Plaintiffs acknowledge that FFRF's standing hinges on Plaintiff Roe's standing. Opp'n 13–14. But even that would be insufficient—an individual's injury in fact "cannot be imputed to [an] association for purposes of standing" if he "was not a member of [the association] when [the incidents at issue] occurred." *Nat. Arch & Bridge Soc'y v. Alston*, 209 F. Supp. 2d 1207, 1219 (D. Utah 2002); *see* MTD at 14 n.6. Plaintiffs' only response is that "this is not the law in the Fifth Circuit." Opp'n 14. They cite no cases that contradict or even call into question *Natural Arch*. Instead they cite one case where the individuals joined the association before the alleged injuries were suffered (*Hunt*) and another case that was dismissed for lack of associational standing (*Warth*). Opp'n 14 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 345 (1977) (membership was compelled by law), and *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (affirming *dismissal* for lack of associational standing)).

2. **Attorney Roe's decision to decline representing clients before Judge Mack is insufficient to confer standing—the "hypothetical future harm" he seeks to avoid is not certainly impending.**

Plaintiff Roe's attempt to manufacture standing by "declin[ing] business in order to avoid appearing in Judge Mack's courtroom," Compl. ¶ 87, is also unavailing. *See Zimmerman*, 881 F.3d at 389 (the "decision to forego solicitations is not an injury sufficient to confer standing").

As the Supreme Court ruled in *Clapper*, a self-inflicted injury, based on a potential future harm, is insufficient to confer standing. 568 U.S. at 416 (no standing even though plaintiff incurred "certain costs as a reasonable reaction to a risk of harm"). "In other words," the Court explained, "[plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id*. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id*.

As the Fifth Circuit recently explained, "identify[ing] the harm serving as the catalyst for" a plaintiff's self-inflicted injury is "critical" to the *Clapper* analysis. *Glass*, 900 F.3d at 239. "If [a plaintiff's] allegation of harm involves a 'chain of contingencies' as in [*Clapper*], then [courts] must follow the Court's approach and identify each contingency prompting the self-[inflicted injury]." *Id*. "Each link in the chain of contingencies must be 'certainly impending' to confer standing." *Id*.[1]

That is exactly what is happening here. Plaintiff Roe's allegation of harm contains at least two contingencies: (1) harm from observing Judge Mack's opening invocation, including the invitation to avoid the invocation by leaving the courtroom; and (2) harm from not participating in

---

[1] *Glass*'s application of *Clapper*'s framework demonstrates that the January 2018 Order does not survive *Glass*. The January 2018 Order found that Plaintiff Doe's injuries were not "self-inflicted" because there was a "substantial risk" that she would be exposed to the invocation practice if she resumed practicing in Judge Mack's courtroom. Opp'n Ex. A at 18. *Glass* not only rejected the notion that a plaintiff could rely on an "objectively understandable and reasonable" risk to show standing, but also reiterated that "parties cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." 900 F.3d at 239–41 (determining that the "allegation of harm contains at least two contingences").

the invocation—which Plaintiff Roe fears will bias Judge Mack against him and his clients.  *See* Compl. ¶¶ 9, 85.

But Plaintiff Roe's fears of bias are, at best, speculative and conjectural.  As the Complaint explains, Judge Mack made clear from the very beginning of his invocation practice that individuals were free to forgo participation in the invocation and that the nonparticipation would have no bearing on the resolution any case before Judge Mack.  Compl. ¶ 34 (Judge Mack invited attendees to "leave into the hallway" if they did not want to participate and made clear that "*your case will not be affected*") (emphasis added); Comp. ¶ 66 (bailiff or clerk of the court announces "that those opposed to prayer may leave the courtroom *without affecting the outcome of their cases*") (emphasis added).[2]

At most, the Complaint alleges that during an invocation in August 2014, "Judge Mack did not bow his head, but observed those in the courtroom," "appear[ing] to study how those in attendance reacted to the Bible reading."  Compl. ¶¶ 38–39.[3]  Not only is the Complaint devoid of any explicit allegation of bias, FFRF has explicitly *disclaimed* any allegation that Judge Mack acts with bias against nonparticipants: "[W]e are not claiming that you are actually biased against those who choose not to participate in your courtroom prayers."  Compl. Ex. D (Dkt. 1-4), at 2 (Letter from FFRF to Judge Mack).  Instead, Plaintiffs are left with speculation and conjecture—based on allegations that Judge Mack has "ample opportunity to note who enters the courtroom after the

---

[2]  Moreover, the signs installed in Judge Mack's courtroom make clear that attendees "are *not required* to be present or participate" in the court's "tradition" of having "a brief opening ceremony that includes a brief invocation by one of [its] volunteer chaplains."  Compl. ¶ 76 (emphasis added; capitalization omitted) .  Moreover, the Complaint's repeated acknowledgement that Judge Mack permits attendees to leave without affecting the outcome of their cases rebuts Plaintiff Roe's contention that he "cannot participate in Precinct 1 courtroom proceedings without taking part in an unconstitutional practice."  Opp'n 9, 12.

[3]  The Complaint also contains the following observations about the "practice in August 2014," from a non-party in a non-verified Complaint:  "I felt that the Judge was watching for reactions from the courtroom. . . .  I definitely felt that our cases were to be affected by our reactions."  Compl. ¶ 41.

prayer," and "has access to a record of those attorneys present in the courtroom when the invitation to leave the courtroom during the prayer practice is announced." Compl. ¶¶ 73, 75.

In the face of multiple guarantees from Judge Mack that nonparticipation in the invocation will not "affect[ ] the outcome of [any] cases," Compl. ¶¶ 34, 66, Plaintiffs have failed to plausibly allege that any harm that might come from Judge Mack's biased rulings is certainly impending. *Glass*, 900 F.3d at 240–42; *Clapper*, 568 U.S. at 416 (requiring a "*nonparanoid* fear" of certainly impending harm) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (complaint must "nudge" claims "across the line from conceivable to plausible").

In short, Plaintiffs' "contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm they seek to avoid is not certainly impending." *Glass*, 900 F.3d at 241. Rather, it is precisely the kind of "hypothetical future harm" the Supreme Court disapproved in *Clapper*. 568 U.S. at 402. Accordingly, this Court should dismiss Plaintiffs' Complaint as a failed attempt to manufacture standing through self-inflicted injury.

**B.      Observing a prayer is not an injury in fact.**

Separate and apart from the failure to allege any certainly impending encounter with Judge Mack's opening invocation, Plaintiffs have not established any cognizable injury in the first place. Accordingly to Plaintiffs, merely being "exposed" to an unwelcome prayer is sufficient to confer standing. Opp'n 10–13. But that contention is contrary to the Supreme Court's holding that "observation of conduct with which one disagrees" is not an injury in fact. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982).

Plaintiffs attempt to distinguish *Valley Forge* on the ground that the plaintiffs there learned about the challenged action "through a news release." Opp'n 7. But the Supreme Court's reasoning was not so constrained. The Supreme Court rejected not only standing based on mere

knowledge of the practice being challenged but also standing based on "observation" of it. *Valley Forge*, 454 U.S. at 485. *Valley Forge* prohibits Establishment Clause challenges even when a plaintiff has personally viewed the challenged conduct. *Freedom from Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1466, 1468 (7th Cir. 1988) (*Valley Forge* prohibits Establishment Clause challenge to a monument even though the plaintiff had "see[n] the monument for herself").

Plaintiffs additionally rely on *Beaumont* and *Tangipahoa*, two Fifth Circuit opinions about religion in public schools, but neither supports Plaintiffs. First, when it comes to Establishment Clause claims, public-school students are different—standing arguments are "stronger when the plaintiffs are students and parents of students attending public schools." *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462, 466 (5th Cir. 2001) (en banc); *see McCarty*, 851 F.3d at 526 (explaining that "'there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools' and that 'prayer exercises in public schools carry a particular risk' of unconstitutional coercion").

Second, Plaintiffs misread both cases. In *Beaumont*, the Fifth Circuit found standing based on the school district's refusal to enable non-religious students to participate in a curriculum-enrichment program by including "secular counseling profession[als]" alongside various clerical volunteers. 240 F.3d at 466–67. The "concrete, judicially cognizable injury" was the "deprivation of a student's right not to be excluded from the benefits of a school-financed educational offering." *Id.* at 467. Plaintiffs here have not been excluded from the benefits of any program, and they do not claim otherwise. And *Tangipahoa* ruled that the plaintiffs there *lacked standing* to pursue their Establishment Clause claims because there was no "proof in the record that Doe or his sons were exposed" to the invocations at issue. *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 497 (5th Cir. 2007) (en banc). That a lack of exposure establishes a lack of standing does *not* mean that

presence of exposure establishes presence of standing. In short, neither *Beaumont* nor *Tangipahoa* is on point. *See McCarty*, 851 F.3d at 527–28.

Plaintiffs thus lean heavily on the January 2018 Order, which found that Plaintiffs had standing. Opp'n 8. Although that Order recognized the importance of the distinction between schoolchildren and adults to the merits analysis, Opp'n Ex. A at 23 n.46 ("The coercion test, which 'analyzes school-sponsored activity in terms of the coercive effect that the activity has on students,' is inapplicable here."), it did not appear to recognize the importance of that distinction to the standing analysis in this case—which involves only adults. *Id*. at 11–15; *see also Beaumont*, 240 F.3d at 466–67 ("[A] claim of standing is even stronger when the plaintiffs are students and parents of students attending public schools. Students and their parents enjoy a cluster of rights vis-à-vis their schools—a relationship which removes them from the sphere of 'concerned bystanders.'").[4]

## II. Judge Mack's ceremonial invocation practice is constitutional.

Judge Mack's practice fully comports with the Establishment Clause. MTD 14–25. First, Plaintiffs do not challenge the accuracy of the history cited in the Judge's Motion to Dismiss and do not offer any contrary history. Second, Plaintiffs do not dispute that everyone in the courtroom is provided an opportunity to leave before the invocation, nor do they dispute that the chaplain program is inclusive and non-discriminatory.

As explained in Judge Mack's Motion to Dismiss (at 14–15), in analyzing the constitutionality of legislative invocations, the Supreme Court has found it "unnecessary" to apply older Establishment Clause tests, like the *Lemon* test, and has instead adopted a historical

---

[4] The Opposition notes that Judge Mack has jurisdiction over cases involving juveniles and suggests that makes the invocation more coercive. Opp'n 18–19. That is a pure distraction. This case involves adult Plaintiffs, not juveniles, and the Complaint does not even allege that a juvenile has been present for a prayer in Judge Mack's courtroom. In any event, as the Fifth Circuit has explained, "the presence of students . . . does not transform this into a school-prayer case." *McCarty*, 851 F.3d at 527–28 ("There were children present at the town-board meetings in [*Town of Greece*], as the dissenting and lower court opinions noted; the Court nonetheless applied the legislative-prayer exception.").

approach. *See Town of Greece*, 572 U.S. at 575–76; *Marsh v. Chambers*, 463 U.S. 783, 786–92

(1983). As the Supreme Court recently explained in *American Legion*:

> The practice begun by the First Congress stands out as an example of respect and tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans. Where categories of monuments, symbols, and *practices with a longstanding history follow in that tradition, they are likewise constitutional*.

139 S. Ct. at 2089 (plurality) (emphasis added).[5] There is no reason to treat courtroom invocations

any differently. *See* Tex. Att'y Gen. Op. No. KP-0109, 2016 WL 4414588, at *3 (2016) (Ex. B).[6]

### A.    Plaintiffs do not rebut the extensive history of courtroom invocations.

Judge Mack's Motion to Dismiss traced an extensive historical tradition of courtroom

invocations, including those delivered by visiting chaplains in Founding-era courtrooms. MTD

14–20. Plaintiffs present no historical evidence to the contrary. Instead, they argue that the Court

should ignore this historical tradition because it "falls outside the pleadings." Opp'n 15. But Judge

Mack's motion did not go beyond the Complaint for facts relating to the underlying conduct being

challenged; it instead relied on historical facts to support a proper interpretation of the

Establishment Clause. Courts routinely rely on historical materials—from the *Federalist Papers*

---

[5] *See also id.* at 2092 (Kavanaugh, J., concurring) ("In the first category of cases"—those involving "religious speech at government events"—"the Court has relied on history and tradition and upheld various religious symbols on government property and religious speech at government events") (citing *Marsh*, 463 U.S. at 787–92, 795, *Van Orden v. Perry*, 545 U.S. 677, 686–90 (2005) (plurality), and *Town of Greece*, 572 U.S. at 575–78).

[6] Curiously, the Opposition suggests that the *Lemon* test should apply because Judge Mack's practice "does not enjoy an unambiguous and unbroken history." Opp'n 23–25. But, as just explained, the *Lemon* test is inapplicable to government invocations. *See McCarty*, 851 F.3d at 525–29 (applying "history and tradition" test to school board's "invocation policy" despite the fact that "[s]chool-board prayer presumably does not date back to the Constitution's adoption, since 'free public education was virtually nonexistent at the time'"). Plaintiffs' endorsement and coercion arguments are similarly misguided. Opp'n 23–25; *see Lynch v. Donnelly*, 465 U.S. 668, 689 (1984) (O'Connor, J., concurring) (endorsement test simply "clarifies the *Lemon* test as an analytical device"); *see also* Opp'n Ex. A at 23 n.46 ("The coercion test . . . is inapplicable here.").

For the same reason, pre–*Town of Greece* cases—like *North Carolina Civil Liberties Union Legal Foundation v. Constangy*, 947 F.2d 1145 (4th Cir. 1991)—that applied the *Lemon* test in the government-invocation context are not persuasive. *See McCarty*, 851 F.3d at 528–29 (distinguishing cases that "predate [*Town of Greece*]"); *see also* Tex. Att'y Gen. Op. No. KP-0109, 2016 WL 4414588, at *2–3 (Ex. B) (distinguishing *Constangy*).

to legislative history to scholarly studies—to provide context for their decisions. *E.g.*, *Briggs v. Mississippi*, 331 F.3d 499, 503–04 (5th Cir. 2003) (evaluating historical materials in Establishment Clause case at motion-to-dismiss stage). Indeed, that is exactly what the Supreme Court did in *Town of Greece*—relying on historical materials rather than the summary judgment record for purposes of constitutional interpretation. *E.g.*, *Town of Greece*, 572 U.S. at 578–80.

The real thrust of Plaintiffs' position, though, is that there is no "long-standing tradition of opening courts with prayer." Opp'n 16 (quoting *Constangy*, 947 F.2d at 1148). But the Fourth Circuit's *Constangy* decision preceded the Supreme Court's decisions in *Town of Greece* and *American Legion*—which directly bound the Establishment Clause inquiry to history and tradition. *See McCarty*, 851 F.3d at 528–28 (distinguishing cases that "predate [*Town of Greece*]"). As a result, the *Constangy* court was not presented with the same historical evidence presented by Judge Mack. That another court, operating under a different legal framework, was not called upon to engage with certain historical practices is no reason for this Court to ignore history altogether.[7]

Indeed, Judge Mack's Motion to Dismiss chronicled the longstanding tradition of courtroom prayers during the Founding era because of their relevance to the original understanding of the Establishment Clause—the crucial inquiry under *Town of Greece* and *American Legion*. MTD 14–20; *see Town of Greece*, 572 U.S. at 600–02 (Alito, J., concurring) ("[W]hat is important is not so much what happened in Nebraska in the years prior to *Marsh*, but what happened . . . during the period leading up to the adoption of the First Amendment. . . . This Court has always

---

[7] Moreover, there are material factual differences between the invocations by Judge Constangy and those offered by Judge Mack, including that Judge Constangy offered the invocation himself, rather than inviting a guest chaplain, and that Judge Constangy did not indicate to those present that participation was voluntary or that they were free to leave without consequence. *Compare Contstangy*, 947 F.2d at 1147, *with* Compl. ¶¶ 65–80; *see McCarty*, 851 F.3d at 528–29 (distinguishing pre–*Town of Greece* cases on the ground that they were "factually, and therefore legally, distinguishable from the circumstance [before the court]").

purported to base its Establishment Clause decisions on the original meaning of that provision."). History and tradition are firmly on Judge Mack's side.

Confronted with this overwhelming weight of evidence of historical practices, Plaintiffs instead raise a series of arguments that all collapse under scrutiny.

First, Plaintiffs—relying on a concurrence and a dissent, but no majority opinions— denigrate this unbroken tradition of invocations in federal and state courts as an example of mere "ceremonial deism" that is somehow distinguishable from the prayers offered by the visiting chaplains in Judge Mack's courtroom. Opp'n 21. The majority opinion in *Marsh*, however, relied on the tradition of opening court sessions with prayer to uphold tradition-specific—that is, *theistic*—legislative prayers by a chaplain. *See Marsh*, 463 U.S. at 786. The prayer offered by the chaplains as part of Judge Mack's practice, even if faith-specific, falls firmly within the mainstream of American historical practices—and, as *Town of Greece* made clear, "insistence on nonsectarian or ecumenical prayer as a single, fixed standard is not consistent with the tradition of legislative prayer outlined in the Court's cases." 572 U.S. at 578; *see also McCarty*, 851 F.3d at 529 (distinguishing pre–*Town of Greece* cases holding invocations unconstitutional due to their sectarian nature because the *Town of Greece* "Court said the Constitution does not require invocations to be non-sectarian"); *see also Bormuth v. Cty. of Jackson*, 870 F.3d 494, 513 (6th Cir. 2017) (en banc) ("It is clear from *Marsh* and *Town of Greece* that creed-specific prayers alone do not violate the First Amendment."). Once again, Plaintiffs attempt to turn back the clock to a prior season of constitutional law.

Second, Plaintiffs complain that Judge Mack did not cite enough examples from later time periods (after the Founding era). Opp'n 11; *see also* MTD 16–18. But it is not difficult to locate

such examples.[8]  As history overwhelmingly demonstrates, invocations at the start of court have long been part of the American tradition and continue to be so today.

Third, Plaintiffs argue that Judge Mack cannot rely on a tradition of prayer in other courts because *his particular* court may not have such a tradition.  Opp'n 22–23.  As an initial matter, that approach is counter to binding precedent.  When the Fifth Circuit upheld the constitutionality of school-board prayer—which "presumably does not date back to the Constitution's adoption"— it did not base its decision on whether the school board at issue had a sufficient history of prayer. *McCarty*, 851 F.3d at 527.  Instead, it relied on a more general history:  the "well-established practice of opening meetings of deliberative bodies with invocations" that was discussed in *Marsh* and *Town of Greece*.  *Id.*  Similarly, *Town of Greece* did not turn on the fact that the Town "established its prayer practice in 1999."  572 U.S. at 628 (Kagan, J., dissenting).  Moreover, Plaintiffs are wrong about local tradition; court sessions in Montgomery County have long opened with prayer.  *See* Cathy Gordon, *The Bench and the Bible:  State District Judge Refuses to Leave His Faith at Courtroom Door*, Hou. Chron. (Nov. 23, 1985), 1985 WLNR 1247161 (Ex. K) (district judge's "invocation at the start of jury trials is as routine as the swearing in of witnesses").

---

[8]  *E.g.*, *Court Holds First Session*, St. Petersburg Times (July 30, 1996), 1996 WLNR 2378937 (Ex. C) (priest prayed at first session in new Florida courthouse); *Minister Turns Into Surprise Witness*, Hou. Chron. (Apr. 1, 1985), 1985 WLNR 1239288 (Ex. D) (minister volunteered after South Carolina "judge asked if there was a pre[a]cher in the courtroom to lead the customary opening prayer"); *25 Moonshiners Confess*, The Morning Tulsa Daily World (Apr. 30, 1922), http://chroniclingamerica.loc.gov/lccn/sn85042345/1922-04-30/ed-1/seq-6 (Ex. E) (Kentucky moonshiners confessed after "a prayer in a crowded courtroom by an aged minister"); *Putnam*, Norwich Bull. (Oct. 9, 1919), http://chroniclingamerica.loc.gov/lccn/sn82014086/1919-10-09/ed-1/seq-9 (Ex. F) (Methodist minister opened Connecticut court with prayer); *Federal Court*, Daily Chieftain (Apr. 6, 1901), http://chroniclingamerica.loc.gov /lccn/sn93050700/1901-04-06/ed-1/seq-1 (Ex. G) (recounting how Methodist minister opened first federal court in Oklahoma in prayer in 1889); *St. Johnsbury*, Orleans Cty. Monitor (June 13, 1881), http://chroniclingamerica.loc.gov /lccn/sn84022871/1881-06-13/ed-1/seq-3 (Ex. H) (Vermont county court opened with prayer from Rev. Sanford); *A Verified Dream*, Superior Times (June 7, 1879), http://chroniclingamerica.loc.gov/lccn/sn85040344/1879-06-07/ed-1/seq-3 (Ex. I) (Methodist minister opened court with prayer); *Circuit Court*, Herald & Tribune (Aug. 10, 1871), http://chroniclingamerica.loc.gov/lccn/sn85033429/1871-08-10/ed-1/seq-3 (Ex. J) (Tennessee "court was opened with prayer by Rev. John P. Holtsinger").

**B.      Judge Mack's practice is voluntary, inclusive, and non-coercive.**

Relying on Justice Kagan's dissent, the Opposition contends that *Town of Greece*, which upheld legislative prayer that fits within our Nation's historical tradition, actually condemns judicial prayer generally. Opp'n 16–17. *Town of Greece* does no such thing.

In that case, Justice Kagan's dissent presented a hypothetical scenario involving courtroom prayer, but that hypothetical prayer was materially different from Judge Mack's practice. In the hypothetical, after "bang[ing] his gavel to call the court to order," the judge himself "*instructs* the 10 or so individuals present to rise for an opening prayer"—never providing the opportunity to opt out without penalty. *Town of Greece*, 572 U.S. at 617 (Kagan, J., dissenting) (emphasis added); *see also Constangy*, 947 F.2d at 1147.

But unlike the judge in Justice Kagan's hypothetical, Judge Mack does not "instruct" anyone to pray—instead, he invites those opposed to the invocation to step outside to avoid even hearing the prayer, while making clear that the decision to do so will not affect the outcome of their case. MTD 22. Plaintiffs rely on the fact that attendance in Judge Mack's courtroom is often compelled, Opp'n 18–19, but attendance in the courtroom generally is irrelevant. The relevant question is whether participation in the invocation is voluntary, and the Opposition does not dispute that it is. Nor does the Opposition argue that Judge Mack is biased against those who choose not to participate. MTD 3, 22.

Thus, Judge Mack's practice is far removed from the sorts of hypotheticals outlined by Justice Kagan's dissent in *Town of Greece*. *See* 572 U.S. at 621–23 (Kagan, J., dissenting) (agreeing with *Marsh*). As a voluntary and inclusive exercise, Judge Mack's practice fully comports with the Constitution.

CONCLUSION

The Court should dismiss Plaintiffs' Complaint with prejudice.

Dated:    October 2, 2019                    Respectfully submitted,

                                             /s/ Allyson N. Ho
Michael D. Berry                             Allyson N. Ho
    Texas Bar No. 24085835                       *Attorney-in-Charge*
    S.D. Tex. Bar No. 2412537                    Texas Bar No. 24033667
Hiram S. Sasser III                              S.D. Tex. Bar No. 1024306
    Texas Bar No. 24039157                   Bradley G. Hubbard
    S.D. Tex. Bar No. 632649                     Texas State Bar No. 24094710
FIRST LIBERTY INSTITUTE                          S.D. Tex. Bar No. 3450976
2001 West Plano Parkway, Suite 1600          GIBSON, DUNN & CRUTCHER, LLP
Plano, Texas  75075                          2100 McKinney Avenue, Suite 1100
Phone:  (972) 941-4444                       Dallas, Texas 75201
Facsimile:  (972) 423-6162                   Telephone:  (214) 698-3100
*mberry@firstliberty.org*                    Facsimile: (214) 571-2900
*hsasser@firstliberty.org*                   *aho@gibsondunn.com*
                                             *bhubbard@gibsondunn.com*

                                             John S. Ehrett (admitted *pro hac vice*)
                                                 Virginia Bar No. 93486
                                             GIBSON, DUNN & CRUTCHER, LLP
                                             1050 Connecticut Avenue, NW
                                             Washington, DC  20036
                                             Telephone:  (202) 955-8500
                                             Facsimile:  (202) 467-0539
                                             *jehrett@gibsondunn.com*

COUNSEL FOR DEFENDANT JUDGE WAYNE MACK
IN HIS INDIVIDUAL CAPACITY

**CERTIFICATE OF SERVICE**

I certify that, on October 2, 2019, a true and correct copy of this Reply in Support of Judge

Mack's Motion to Dismiss was served by ECF on all counsel of record.


/s/ *Allyson N. Ho*
Allyson N. Ho