UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC. and JOHN ROE, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CASE NO. 4:19-cv-1934 |
| JUDGE WAYNE MACK in his personal capacity and in his official judicial capacity on behalf of the State of Texas | § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE OF TEXAS'S MOTION FOR LEAVE TO FILE BRIEF AS A THIRD PARTY**

SAMUEL T. GROVER
S.D. Tex. Bar No. 3050690
  *Counsel of Record*
ELIZABETH CAVELL
Wis. State Bar No. 1089353
Admitted *Pro Hac Vice*
FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, WI 53701
Telephone:  608-256-8900
Telecopier:  608-204-0422
sgrover@ffrf.org / ecavell@ffrf.org

AYESHA KHAN
D.C. Bar No. 426836
Admitted *Pro Hac Vice*
ROCK CREEK LAW, LLC
5309 Burling Terrace
Bethesda, MD 20814
Telephone: 301-246-0346

November 8, 2019                                    COUNSEL FOR PLAINTIFFS

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... v

ARGUMENT ...................................................................................................................... 2

    I.      The State is a Defendant in this action, not merely an interested third party, because Judge Mack's courtroom prayers are delivered pursuant to authority derived from the State. ........................................................... 2

    II.     A decision against the State would redress Plaintiff's injuries. .............. 7

    III.    Because the State has effectively been served and has, at a minimum, received notice and an opportunity to respond, it should not be allowed to proceed as a "third party." ................................................................. 9

    IV.    Allowing the State to make arguments outside the scope of the Federal Rules of Civil Procedure instead of as a Defendant would prejudice the Plaintiffs. ................................................................................................ 11

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Alabama v. Pugh*,
438 U.S. 781 (1978) .................................................................................................. 10

*Bennett v. Pippin*,
74 F.3d 578 (5th Cir. 1996) ......................................................................................... 6

*Brandon v. Holt*,
469 U.S. 464 (1985) .................................................................................................. 10

*Carbalan v. Vaughn*,
760 F.2d 662 (5th Cir. 1985) ....................................................................................... 4

*Clanton v. Harris Cty.*,
893 F.2d 757 (5th Cir.1990) ........................................................................................ 4

*Clark v. Tarrant Cty.*,
798 F.2d 736 (5th Cir.1986) ........................................................................................ 5

*Comm. on Judiciary of U.S. House of Representatives v. Miers*,
542 F.3d 909 (D.C. Cir. 2008) ..................................................................................... 9

*Davis v. Tarrant Cty.*,
565 F.3d 214 (5th Cir. 2009) ................................................................................... 4, 5

*Eggar v. City of Livingston*,
40 F.3d 312 (9th Cir. 1994) ..................................................................................... 4, 5

*Ex Parte Virginia*,
100 U.S. 339 (1880) .................................................................................................... 3

*Ex Parte Young*,
209 U.S. 123 (1908) ................................................................................................ 1, 9

*Familias Unidas v. Briscoe*,
619 F.2d 391 (5th Cir. 1980) ....................................................................................... 4

*Fields v. Tex. Dept. of State Health Servs.*,
No. 16-607, 2017 WL 9285509 (E.D. Tex. Aug. 21, 2017) ........................................ 7

*Freedom from Religion Foundation, Inc. v. Mack*,
No. H-17-881, 2018 WL 6981153 (S.D. Tex. Sept. 27, 2018) ............................ 2, 3, 6

*Garcia Guevara v. City of Haltom City*,
106 Fed. App'x 900 (5th Cir. 2004) ............................................................................... 4

*Gegenheimer v. Galan*,
920 F.2d 307 (5th Cir. 1991) ........................................................................................ 11

*Hamill v. Wright*,
870 F.2d 1032 (5th Cir. 1989) ........................................................................................ 5

*Johnson v. Moore*,
958 F.2d 92 (5th Cir. 1992) ............................................................................................ 4

*Kentucky v. Graham*,
473 U.S. 159 (1985) ................................................................................................ 10, 11

*Krueger v. Reimer*,
66 F.3d 75 (5th Cir. 1995) .............................................................................................. 4

*Ledbetter v. City of Topeka*,
318 F.3d 1183 (10th Cir. 2003) ...................................................................................... 5

*McMillan v. Svetanoff*,
793 F.2d 149 (7th Cir. 1986) .......................................................................................... 7

*Morrison v. Lipscomb*,
877 F.2d 463 (6th Cir. 1989) .......................................................................................... 7

*Rutherford v. Harris Cty.*,
3 Willson 143, 1886 WL 4477 (Tex. App. 1886) ........................................................... 6

*Sullo & Bobbitt, PLLC v. Abbott*,
No. 11-1926, 2013 WL 1949835 (N.D. Tex. May 13, 2013) .......................................... 6

*Tinoco v. Raleeh*,
No. 05-367, 2006 WL 27287 (E.D. Tex. 2006) .............................................................. 7

*United States v. Classic*,
313 U.S. 299 (1941) ....................................................................................................... 3

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ......................................................................................................... 9

*Williams v. Butler*,
863 F.2d 1398 (8th Cir.1988) ......................................................................................... 7

*Woods v. City of Michigan City*,
940 F.2d 275 (7th Cir. 1991) ..................................................................................... 5

**Constitutional Provisions**
TEX. CONST. art. V, § 1 ............................................................................................ 3

TEX. CONST. art. V, § 18(a) ...................................................................................... 3

TEX. CONST. art. V, § 19 .......................................................................................... 3

TEX. CONST. art. V, § 1-a ......................................................................................... 8

**Statutes**
TEX. GOV'T CODE § 27.061 ..................................................................................... 3

**Rules**
FED. R. CIV. PRO. 8(b)(6) ....................................................................................... 12

FED. R. CIV. PRO. 12(a)(1)(A) ................................................................................ 12

FED. R. CIV. PRO. 12(a)(4) ..................................................................................... 12

FED. R. CIV. PRO. 12(b)(1) ..................................................................................... 11

FED. R. CIV. PRO. 12(b)(5) ..................................................................................... 11

FED. R. CIV. PRO. 12(b)(6) ..................................................................................... 11

FED. R. CIV. PRO. 12(g)(2) ..................................................................................... 12

FED. R. CIV. PRO. 12(h) .......................................................................................... 12

FED. R. CIV. PRO. 55 .............................................................................................. 12

**Other Authorities**
Op. Tex. Att'y Gen. KP-0109 (2016) ......................................................................... 8

**INTRODUCTION**

The State of Texas has filed a motion (Doc. No. 20) seeking leave to file a brief as a third party. The accompanying brief (Doc. No. 20-1) is essentially a motion to dismiss, arguing that the State is not responsible for Judge Mack's behavior because he is a county—rather than a State—official, that the Plaintiffs lack standing to bring their claim, and that the Plaintiffs have failed to state a claim upon which relief can be granted because Judge Mack's courtroom prayer is licensed by the case law upholding legislative prayer.

But Judge Mack wields State authority when he engages in his courtroom prayer practice; indeed, a judge of this Court previously held as much. Consequently, because Judge Mack has been sued in his official capacity, the State is directly liable for his actions under *Ex Parte Young*, 209 U.S. 123 (1908). Provided that the State has been given notice and an opportunity to be heard, which it has, it should not be allowed to evade responsibility by proceeding as a third party. Indeed, allowing the State to proceed as a third party—and in that capacity to raise arguments that would normally be handled in a motion to dismiss under Federal Rule of Civil Procedure 12—would unduly prejudice the Plaintiffs because it would essentially give the State two bites at the same apple.[1]

---

[1] This Brief focuses on the arguments presented in the State's Motion for Leave to File Brief Regarding its Interests (Doc. No. 20) and in section I of the State's proposed brief (Doc. No. 20-1), which concern whether the State of Texas is liable for actions taken in Judge Mack's judicial capacity. It does not respond to the arguments in sections II and III of the State's brief—which relate to standing and failure to state a claim—because, as set forth below, those arguments should be addressed in a proper motion to dismiss. It bears mentioning, however, that the State's arguments on this score are analogous to the ones made by Judge Mack in his motion to dismiss Plaintiffs' individual capacity claims, *see* Mack Mot. to Dismiss (Doc. No. 12) at 8–25, which Plaintiffs have responded to in their Opposition to Judge Mack's motion. *See* Pls.' Opp. (Doc. No. 17) at 6–25.

## ARGUMENT

**I. The State is a Defendant in this action, not merely an interested third party, because Judge Mack's courtroom prayers are delivered pursuant to authority derived from the State.**

Plaintiffs bring claims for actions taken by Judge Mack under color of State law. The State is mistaken in claiming that "any claims against [Judge Mack] do not implicate the State." Doc. No. 20 at 1. Indeed, in ruling on an earlier lawsuit brought by the Plaintiffs and others against Montgomery County, Judge Werlein ruled precisely to the contrary. *See Freedom from Religion Found., Inc. v. Mack*, No. H-17-881, 2018 WL 6981153, ECF No. 88 (S.D. Tex. Sept. 27, 2018).

In that earlier lawsuit, the plaintiffs brought claims solely against Judge Mack in his official capacity on behalf of the County. Judge Werlein correctly treated plaintiffs' claims as solely implicating the County because plaintiffs confirmed their official-capacity action "was simply another way of suing Montgomery County" and the plaintiffs "[did] not identify any other government entity synonymous with Judge Mack in his official capacity." *Id.* at *1, ECF No. 88 at 3. Thereafter, Judge Werlein held that the plaintiffs' injuries did not arise "from *the County's* challenged actions" and that they would thus not be "redressed by declaratory or injunction relief *against the County*." *Id.* at *2, ECF No. 88 at 6 (emphasis in original). The Court acknowledged that Texas justices of the peace are established by the same section of the Texas Constitution that establishes county commissioners courts, *id.* at *3, ECF No. 88 at 7, and that the commissioners courts establish the location of justice of the peace courthouses and set their salaries, subject to a statutory minimum. *Id.* at *3 n.12, ECF No. 88 at 8 n.12. But the Court

held that county officials have no "control over the courtroom proceedings of justices of the peace" and that Montgomery County lacked the authority to control "the courtroom practices of a justice of the peace." *Id.* at *3, n.12, ECF No. 88 at 7–8, n.12. Rather, that power resides with the State because Judge Mack derives his judicial authority directly from the Texas Constitution's article on the state's judiciary, *id.* at *3, ECF No. 88 at 7 (citing TEX. CONST. art. V, §§ 18(a), 19), and the State further vests justices of the peace with the direct authority to "adopt local rules of administration." *Id.* (citing TEX. GOV'T CODE § 27.061).

Judge Mack created his courtroom-prayer practice while exercising his judicial authority as a justice of the peace. Just like every other Texas judge, that judicial power is derived directly from the Texas Constitution. *See* TEX. CONST. art. V, § 1 ("*The judicial power of this State shall be vested* in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, *in Courts of Justices of the Peace*, and in such other courts as may be provided by law." (emphasis added)). By invoking a religious practice at the start of his court sessions, Judge Mack is abusing the authority that the State Constitution gives him. The "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.'" *United States v. Classic*, 313 U.S. 299, 326 (1941) (citing *Ex Parte Virginia*, 100 U.S. 339, 346–47 (1880) (holding that actions of a state officer who exceeds the limits of his authority

constitute state action)). Thus, Judge Mack's courtroom-prayer practice directly implicates the State.

The Fifth Circuit has repeatedly acknowledged that local Texas judges wear two hats. In *Carbalan v. Vaughn*, the Fifth Circuit noted that municipal judges in Texas perform several different types of actions—ranging from preparing the county's budget to deciding cases—and that some of those actions are taken under county authority while others are taken under State authority. Their *judicial* function specifically is "fairly . . . characterized as the effectuation of the policy of the State of Texas . . . for which the citizens of a particular county should not bear singular responsibility." 760 F.2d 662, 665 (5th Cir. 1985) (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)); *see also Garcia Guevara v. City of Haltom City*, 106 Fed. App'x 900, 902 (5th Cir. 2004) (holding that "a municipal judge acting in his judicial capacity . . . 'was functioning as state judicial officer'" and thus his actions implicated the State, not the city defendant) (citing *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).

Accordingly, the Fifth Circuit has repeatedly held that "[a] local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county." *Davis v. Tarrant Cty.*, 565 F.3d 214, 227 (5th Cir. 2009) (citing *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995); *Clanton v. Harris Cty.*, 893 F.2d 757, 758 (5th Cir.1990) ("Texas district judges act for the state in appointing counsel for indigent criminal defendants . . ."); *Hamill v. Wright*, 870

F.2d 1032, 1037 (5th Cir.1989); *Clark v. Tarrant Cty.*, 798 F.2d 736, 744 (5th Cir.1986) (stating that Texas district judges "are undeniably state elected officials")). The *Davis* court concluded that a judge's act of creating a list of rotating court appointees was inextricably tied to his judicial role, and thus, he acted with state authority. 565 F.3d at 226. The Fifth Circuit thus dismissed claims against the county defendant for lacking control over the judge's conduct and further acknowledged, as to the defendant judges in their official capacities, that "Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities *as state actors.*" *Id.* at 228 (emphasis added) (further holding that "the Eleventh Amendment does not bar claims for prospective relief").

Other federal appeals courts have likewise concluded that municipal judges exercise state authority when acting in their judicial capacities. *See, e.g.*, *Eggar*, 40 F.3d at 315 (noting that judges "can act on behalf of more than one government entity" and holding a municipal judge's actions did not implicate the city in which he served, because "[as Montana] state law makes clear, the Judge's [duty] arises from his membership in the state judiciary," and thus, "the City has no control over [the judge's] state judicial functions"); *Woods v. City of Michigan City*, 940 F.2d 275, 279 (7th Cir. 1991) (holding a city and county were not liable for a municipal judge's bond directive because the judge acted as an officer of the Indiana state judicial system); *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1190 (10th Cir. 2003) (collecting cases and holding a municipal judge's judicial conduct did not implicate the city because "the authority of the municipal official . . . is established by state law").

No case cited in the State's proposed brief reaches a contrary conclusion. The only Fifth Circuit decision the State cites regarding the issue of municipal versus state liability is *Bennett v. Pippin, see* Doc. No. 20-1 at 4, which involved a sheriff's rape of a murder suspect. 74 F.3d 578 (5th Cir. 1996). The Fifth Circuit concluded that the county was liable for the sheriff's actions because "the county sheriff is the county's final policymaker in the area of law enforcement" and he used that authority to engage in the rape. *Id.* at 586. Here, however, Judge Werlein has concluded that the opposite is true: the authority that Justice of the Peace Mack exercises in his courtroom derives from the State rather than from the County. *See* No. H-17-881, 2018 WL 6981153 at *3, ECF No. 88 at 7–8. And *Bennett* involved a sheriff, the quintessential county employee, rather than a judicial officer, who is well understood to wear two hats.

The cases cited by Texas that involve justices of the peace are equally unpersuasive. *See* Doc. No. 20-1 at 3–4. It is unremarkable that the court in *Rutherford v. Harris County* found that a justice of the peace's actions implicated the county when he was performing his duties as a county coroner. 3 Willson 143, 1886 WL 4477 (Tex. App. 1886). That decision is consistent with the understanding that Texas judges act in multiple capacities and the judge's judicial authority was not implicated. The same is true of *Sullo & Bobbitt, PLLC v. Abbott*, where plaintiffs challenged a justice of peace's decision not to release court records. No. 11-1926, 2013 WL 1949835 (N.D. Tex. May 13, 2013). The court did not consider whether this act involved an exercise of judicial authority. *Id.* Likewise, *Tinoco v.*

*Raleeh* involved a claim against a justice of the peace for creating a sexually and racially hostile work environment. No. 05-367, 2006 WL 27287, at *2 (E.D. Tex. 2006). Personnel actions are not the type of functions that implicate judicial authority. *See e.g.*, *Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir.1988) (holding that a municipal judge's actions "[r]egarding employment matters in his court" implicated the municipality); *McMillan v. Svetanoff*, 793 F.2d 149, 155 (7th Cir. 1986) (characterizing hiring and firing decisions as "typically an administrative task" as opposed to a judicial function); *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989) (characterizing a judge's issuance of a directive to all court personnel as an administrative, non-judicial act). Finally, as was the case with Judge Werlein's ruling, the district court in *Fields v. Texas Department of State Health Services* had no opportunity to rule on the liability of the State for a justice of the peace's official-capacity actions, because the plaintiff identified only the county, not the State, as the responsible entity. *See* No. 16-607, 2017 WL 9285509 at *4 (E.D. Tex. Aug. 21, 2017) (assuming without deciding that plaintiff's official capacity claims against four defendants were all redundant with claims against the county). That decision cited solely to *Kentucky v. Graham* in consolidating the plaintiff's claims, which says nothing about the State's liability.

## II.  A decision against the State would redress Plaintiff's injuries.

Unlike Montgomery County, the State is far from powerless to redress the harm being suffered by Plaintiffs. Despite the State's claims to the contrary, *see* Doc. No. 20-1 at 3 ("the Constitution does not provide any mechanism for the State to direct, control, or authorize any actions of its justices of the peace"), the State's

authority to regulate Judge Mack's conduct is directly established in the State Constitution. *See* TEX. CONST. art. V, § 1-a (describing powers of the State Commission on Judicial Conduct). In fact, the State has already had two opportunities to end Judge Mack's courtroom-prayer practice. It has simply declined to do so.

Prior to bringing any lawsuit against Judge Mack, Plaintiff FFRF first sought relief from the State Commission on Judicial Conduct, which is an office of the State. *See* Compl., Doc. No. 1 ¶ 44, Ex. D. The State Commission investigated Judge Mack's conduct for more than one year, after which it strongly cautioned Judge Mack against continuing his courtroom-prayer practice, due to the appearance of bias the practice creates. *Id.* ¶ 48. But the Commission declined to order him to stop or to formally discipline him, solely because it lacked the authority to determine the constitutionality of Judge Mack's courtroom-prayer practice. *Id.* Instead of issuing an order, the Commission sought the opinion of the Texas Office of the Attorney General, another State office, to clarify the law. *Id.* ¶ 54. Had the Attorney General issued an opinion that clergy-led courtroom prayer is unconstitutional, that opinion in itself likely would have been enough to end Judge Mack's practice. If not, the State Commission, in reliance on that opinion, could have disciplined Judge Mack for continuing to facilitate those prayers. Instead, the Office of the Attorney General issued Opinion No. KP-0109, which fully endorsed Judge Mack's courtroom-prayer practice. Compl. ¶ 56.[2] The Attorney

---

[2] Op. Tex. Att'y Gen. KP-0109 (2016), *available at* https://texasattorneygeneral.gov/sites/default/files/opinion-files/opinion/2016/kp0109.pdf

General then participated in a press conference to announce his opinion, on the steps of the Montgomery County Courthouse, joined by Judge Mack and the attorneys who represented Judge Mack in his hearing before the State Commission.

If this Court declares Judge Mack's courtroom-prayer practice unconstitutional, Plaintiffs' injuries will be redressed in one of two ways. First, this Court should presume that Judge Mack will comply with the Court's declaration by voluntarily discontinuing his courtroom-prayer practice. *Accord Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (describing the long-standing presumption that government officials will adhere to the law as declared by the courts). If he declines to do so, the State Commission on Judicial Conduct has the authority to discipline Judge Mack for his unconstitutional acts, a remedy that Plaintiffs will certainly seek, as they attempted to do previously. Either way, the harm suffered by Plaintiffs would be redressed.

III. **Because the State has effectively been served and has, at a minimum, received notice and an opportunity to respond, it should not be allowed to proceed as a "third party."**

It has long been established that a state must answer in federal court as a defendant in an action seeking prospective relief against a state official sued in his or her official capacity. *See Ex Parte Young*, 209 U.S. 123 (1908); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."). Under the *Young* doctrine, because the Eleventh Amendment prohibits naming the state or

state agency itself, the plaintiff instead names the responsible state official in his or her official capacity. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

Although in its motion the State claims that it "has not been served," Doc. No. 20 at 1, Plaintiffs executed service on Judge Mack in his official capacity on August 19, 2019. *See* Doc. No. 11. Under established Supreme Court precedent, so long as service on Judge Mack in his official capacity was properly executed, then "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *accord Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) ("In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond. We now make that point explicit."). In *Brandon*, the Supreme Court held the responding government entity liable without evidence on the record that the government had itself been served, because "Here, the Police Department and the city received notice; no claim is made that the Director of Police and the city were without due notice of the proceedings." 469 U.S. at 472 n.20.

The Fifth Circuit has summarized the Supreme Court precedent thusly: "Under *Brandon* and *Graham*, then, a plaintiff need not join the governmental unit itself as a defendant to impose liability against it, but may sue the individual official in his official capacity, so long as the governmental unit the official

represents is given notice and an opportunity to be heard." *Gegenheimer v. Galan*, 920 F.2d 307, 310 (5th Cir. 1991).

In this case, the State of Texas received notice of this lawsuit in June 2019, when Plaintiffs first mailed notice of the lawsuit to the Texas Office of the Attorney General and counsel for Plaintiffs had their first of five phone conversations with attorneys for that Office. And not only has the State received an opportunity to respond, it has actually responded. Thus, because Judge Mack was served in his official capacity, and the State has been given notice of the action and has had an opportunity to be heard, this official-capacity lawsuit is "in all respects other than name, to be treated as a suit against the [State]." *Graham*, 473 U.S. at 166. Accordingly, the State cannot be allowed to forsake responsibility for Judge Mack's behavior by remaining a "third party."

**IV.   Allowing the State to make arguments outside the scope of the Federal Rules of Civil Procedure instead of as a Defendant would prejudice the Plaintiffs.**

In its proposed motion, the State advances a number of arguments that would normally be advanced under Federal Rule of Civil Procedure 12. The State proposes to argue that this Court lacks subject-matter jurisdiction, a Rule 12(b)(1) claim, that "Plaintiffs failed to state a claim upon which relief can be granted," a Rule 12(b)(6) claim, and insufficient service of process on the State, a claim properly brought under Rule 12(b)(5). If this Court entertains those arguments through a motion by the State as a third party—even if the Court ultimately rules in Plaintiffs' favor—the Plaintiffs will be unjustly disadvantaged.

If allowed to submit a motion outside the confines of Rule 12, the State would effectively be permitted to argue a quasi-motion to dismiss without triggering the limitations imposed by Rule 12. Rule 12(g)(2), for instance, limits a defendant's ability to file successive motions to dismiss. Similarly, under Rule 12(h) a defendant waives certain defenses if it moves under Rule 12(b) without raising them. If, however, the State is permitted to proceed as a "third party," the Plaintiffs would be deprived of these protections.

Additionally, by filing this motion as a third party, the State has elected not to exercise the option afforded to defendants under Rule 12(a)(4) to serve a motion that would postpone its deadline to answer the pleadings under Rule 12(a)(1)(A). Since the State's deadline to file an answer (or a motion conforming to the requirements of Rule 12) has long since passed, the State may be deemed to have admitted all claims in Plaintiffs' complaint, pursuant to Rule 8(b)(6). In fact, because it appears to be the State's position that it has not entered an appearance as a defendant *at all*, Judge Mack remains unrepresented in his official capacity as a judicial officer on behalf of the State of Texas. As such, an entry of default judgment against Judge Mack in his official capacity may be proper under Rule 55.

## CONCLUSION

In sum, the Court should conclude, as Judge Werlein did, that Judge Mack is acting pursuant to State authority when he delivers his courtroom prayers. The Court should consequently direct the State to respond to the Complaint or to file a proper motion to dismiss, rather than continuing to proceed as a "third party."

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 8th day of November, 2019, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record, including counsel for the State of Texas.

>    */s/ Samuel T. Grover*
>    Samuel T. Grover