IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., and JOHN ROE, | § § § § § | |
| *Plaintiffs*, | § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-1934 |
| JUDGE WAYNE MACK, in his personal capacity and in his official capacity on behalf of the State of Texas, | § § § § § | |
| *Defendant*. | § | |

**APPENDIX TO JUDGE MACK'S MOTION TO STAY DISCOVERY
PENDING RESOLUTION OF HIS MOTION TO DISMISS**

Defendant, Judge Wayne Mack in his individual capacity, files this Appendix in support

of his motion to stay discovery pending resolution of his motion to dismiss.

APPENDIX INDEX

| Exhibit | Page(s) | Document |
|---------|---------|----------|
| A | App. 1–2 | *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 2008 WL 8465061 (S.D. Tex. Aug. 11, 2008) |
| B | App. 3 | *Johnson v. Ashmore*, 2016 WL 8453918 (N.D. Tex. Jan. 22, 2016) |
| C | App. 4–15 | *Velera v. United States*, 2012 WL 1936313 (S.D. Tex. May 29, 2012) |
| D | App. 16–17 | *McPeters v. LexisNexis*, 2011 WL 13253446 (S.D. Tex. Oct. 5, 2011) |
| E | App. 18 | Order, *Cruise v. Dean*, No. 4:18-cv-1153 (S.D. Tex. May 8, 2018), ECF 11 |
| F | App. 19 | Order, *Colindres v. Univ. of Tex. MD Anderson Cancer Ctr.*, No. 4:18-cv-163 (S.D. Tex. Apr. 5, 2018), ECF 9 |
| G | App. 20 | Order, *Woods v. Luby's, Inc.*, No. 4:17-cv-1146 (S.D. Tex. Sept. 19, 2017), ECF 30 |
| H | App. 21 | Order, *Esquibel v. Sprint Energy Servs., LP*, No. 4:14-cv-242 (S.D. Tex. Jan. 9, 2015), ECF 40 |
| I | App. 22–23 | Order, *Spectrum Stores, Inc. v. CITGO Petrol. Corp.*, No. 4:06-cv-3569 (S.D. Tex. Feb. 9, 2007), ECF 53 |
| J | App. 24–26 | *McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*, 2015 WL 12839785 (S.D. Tex. July 17, 2015) |
| K | App. 27–28 | *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, 2017 WL 10605194 (S.D. Tex. May 26, 2017) |

Dated:   November 15, 2019                Respectfully submitted,

                                          /s/ Allyson N. Ho

Michael D. Berry                          Allyson N. Ho
   Texas Bar No. 24085835                 *Attorney-in-Charge*
   S.D. Tex. Bar No. 2412537               Texas Bar No. 24033667
Hiram S. Sasser III                          S.D. Tex. Bar No. 1024306
   Texas Bar No. 24039157          Bradley G. Hubbard
   S.D. Tex. Bar No. 632649               Texas Bar No. 24094710
FIRST LIBERTY INSTITUTE                      S.D. Tex. Bar No. 3450976
2001 West Plano Parkway, Suite 1600       Bennett Rawicki
Plano, Texas  75075                          Texas Bar No. 24083708
Phone:  (972) 941-4444                       S.D. Tex. Bar No. 3471399
Facsimile:  (972) 423-6162                GIBSON, DUNN & CRUTCHER, LLP
*mberry@firstliberty.org*                 2001 Ross Avenue, Suite 2100
*hsasser@firstliberty.org*                Dallas, Texas 75201
                                          Telephone:  (214) 698-3100
                                          Facsimile: (214) 571-2900
                                          *aho@gibsondunn.com*
                                          *bhubbard@gibsondunn.com*
                                          *brawicki@gibsondunn.com*

                                          John S. Ehrett (admitted *pro hac vice*)
                                             Virginia Bar No. 93486
                                          GIBSON, DUNN & CRUTCHER, LLP
                                          1050 Connecticut Avenue, NW
                                          Washington, DC  20036
                                          Telephone:  (202) 955-8500
                                          Facsimile:  (202) 467-0539
                                          *jehrett@gibsondunn.com*

COUNSEL FOR DEFENDANT JUDGE WAYNE MACK
IN HIS INDIVIDUAL CAPACITY


CERTIFICATE OF SERVICE

    I certify that, on November 15, 2019, a true and correct copy of the foregoing Motion to

Dismiss and Brief in Support was served by ECF on all counsel of record.


                                          /s/ Allyson N. Ho
                                          Allyson N. Ho

# Exhibit A

Case 4:19-cv-01934 Document 29-1 Filed on 11/15/19 in TXSD Page 5 of 42

Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., Not Reported in...

2008 WL 8465061

2008 WL 8465061
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

RIO GRANDE ROYALTY COMPANY,
INC., on behalf of itself and all
others similarly situated, Plaintiff,
v.
ENERGY TRANSFER PARTNERS, L.P., Energy
Transfer Company, ETC Marketing, Ltd.,
and Houston Pipeline Company, Defendants.

No. H–08–cv–0857.
|
Aug. 11, 2008.

**Attorneys and Law Firms**

Bernard Persky, Gregory Asciolla, William Vincent Reiss, Labaton Sucharow LLP, New York, NY, Robert A. Chaffin, Chaffin Stiles, Houston, TX, for Plaintiff.

Charles W. Schwartz, Skadden Arps et al., Houston, TX, Jerome Hirsch, Skadden Arps et al., New York, NY, Steven Sunshine, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for Defendants.

### *MEMORANDUM AND ORDER*

KEITH P. ELLISON, District Judge.

**\*1** On this day the Court considered Defendants' Motion for Protective Order Staying Discovery. Defendants have asked the Court to stay discovery in this case pursuant to Federal Rule of Civil Procedure 26(b) and (c). After considering the briefing and the arguments presented by parties at the July 22, 2008 hearing, the Court has concluded that Defendants' Motion for Protective Order Staying Discovery, Docket No. 19, should be **GRANTED.**

Plaintiff has asked Defendants to produce all documents and electronically stored information submitted to the Commodity Futures Trading Commission (CFTC), the Federal Energy Regulatory Commission (FERC), or any other government agency or investigatory body in connection with federal investigations into Defendants' natural gas trading activities. Defendants explain that the request would require them to review millions of pages of documents that were produced to the CFTC and FERC for privilege, and would be unduly burdensome, resulting in hundreds of thousands of dollars in costs. Defendants also argue that Plaintiff's request is overly broad, because, *inter alia,* the documents produced to the CFTC and FERC relate to time periods and locations that are not within the scope of Plaintiff's complaint.

The Federal Rules of Civil Procedure presume that discovery may proceed despite the filing of a Motion to Dismiss, and this case is not governed by a statute such as the Private Securities Litigation Reform Act (PSLRA) that requires discovery to be stayed until the Court has ruled on a Motion to Dismiss. The Court does have discretion to stay discovery pending a ruling on a Motion to Dismiss, however. *See, e.g., Landry v. Air Line Pilots Ass'n Intern. AFL–CIO,* 901 F.2d 404, 435–36 (5th Cir.1990); *Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir.1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."). Some courts have recognized that "staying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming and expensive." *Netflix Antitrust Litig.,* 506 F.Supp. 308, 321 (N.D.Cal.2007) (allowing narrowly-tailored discovery to go forward) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)); *see also In re Graphics Processing Units Antitrust Litig.,* No. C 06–07417, 2007 WL 2127577, at \*4 (N.D.Cal. July 24, 2007) (recognizing that *Twombly* did not "erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss," but noting that "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly,* at least when the discovery would be burdensome.").

The Court finds that the discovery requested by Plaintiff would constitute an undue burden for Defendants. Although the documents have already been assembled and produced to government agencies, thus reducing the burden to Defendants somewhat, Defendants' need to review such a large volume of documents prior to producing them would be a significant burden. Furthermore, Plaintiff concedes that it does not need this discovery to respond to the pending Motion to Dismiss. *See Petrus v. Bowen,* 833 F.2d 581, 582 (5th Cir.1987) (upholding a discovery stay where Plaintiff would not have learned anything that could affect the resolution of the dispositive motion). Although some courts have also considered the strength of the dispositive motion when

Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., Not Reported in...

2008 WL 8465061

determining whether to stay discovery, *see, e.g., Von Drake v. Nat'l Broad Co.,* No. 04–cv–0652, 2004 WL 1144142, at *1 (N.D.Tex. May 20, 2004), briefing on the Motion is not complete, and the Court does not wish to make a premature pronouncement on its merits. [1] The Court believes that discovery should be stayed given the burden to Defendant of reviewing the documents and because Plaintiff has not demonstrated any need for the documents prior to this Court's ruling on the pending Motion.

[1] This Order should not be understood as any indication of how the Court will ultimately rule on Defendants' Motion to Dismiss.

**\*2** Defendant's Motion is, therefore, **GRANTED.** All discovery in this case, including Rule 26 disclosures, is stayed pending the Court's ruling on Defendants' Motion to Dismiss, filed May 19, 2008.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 8465061

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

App. 2

# Exhibit B

2016 WL 8453918
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Joseph JOHNSON, Jr., Plaintiff,

v.

Alison Rae ASHMORE and Craig
William Budner, Defendants.

No. 3:15-CV-2475-K (BF)
|
Signed 01/22/2016

**Attorneys and Law Firms**

Joseph Johnson, Jr., Fort Washington, MD, pro se.

Beth Bivans Petronio, Jack Jordan Stone, K&L Gates LLP, Dallas, TX, for Defendants.

**ORDER**

PAUL D. STICKNEY, UNITED STATES MAGISTRATE JUDGE

*1  The District Court referred this case to the United States Magistrate Judge for Pretrial Management. Before the Court is Defendants' Motion for Protective Order Staying Discovery [D.E. 36]. Upon consideration, the motion [D.E. 36] is GRANTED.

Defendants seek to stay discovery in this case until the Court rules on their pending motions to dismiss [D.E. 9, 12]. *See* Mot. for Protective Order [D.E. 36 at 4]. Defendants contend that their motions to dismiss raise meritorious grounds for dismissal, including the argument that Plaintiff "cannot credibly establish subject matter jurisdiction in this Court, as he has repeatedly asserted in previous court filings that the amount in controversy in this dispute does not exceed $75,000." *See id.* [D.E. 36 at 2-3]. Plaintiff argues in his response that he would be prejudiced by any stay in discovery given that the discovery deadline in this case is April 15, 2016, and because much of the discovery Plaintiff seeks "bears directly" on Defendants' motions to dismiss. *See* Resp. [D.E. 37 at 5].

"A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). Here, Defendants challenge the Court's subject matter jurisdiction. *See* Mot. for Protective Order [D.E. 36 at 3]. The Court finds that a stay of discovery is proper until such preliminary questions are decided. *See Wheeler v. Ceniza*, No. 3:12-CV-1898-L, 2013 WL 1091242, at *11 (N.D. Tex. Mar. 15 2013) ("Motions for lack of subject matter jurisdiction and those dealing with procedural defects should be decided first...."); *Velera v. United States*, No. H-07-343, 2012 WL 1936313, at *12 (S.D. Tex. May 29, 2012) ("[Q]uestions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.' " (quoting *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999))). Although Plaintiff contends that the discovery sought is needed in connection with Defendants' motions to dismiss, "Nothing that [Plaintiff] could [ ] learn[ ] through discovery [w]ould [ ] affect[ ] the resolution of the defendants' [ ] motion[s] [to dismiss]." *Petrus*, 833 F.2d at 583.

Discovery in this case is stayed until the Court rules on the pending motions to dismiss. Discovery shall recommence, if necessary, upon disposition of the motions to dismiss, and conclude 90 days after the date the Court rules on Defendants' motions to dismiss. Further, the dispositive motions deadline will be extended to 30 days after discovery closes, if necessary.

**SO ORDERED**, January 22, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 8453918

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

App. 3

# Exhibit C

2012 WL 1936313, 109 A.F.T.R.2d 2012-2303, 2012-1 USTC P 50,374

2012 WL 1936313
United States District Court,
S.D. Texas,
Houston Division.

Alfonso VARELA and Sandra
Santa Maria Varela, Plaintiffs,
v.
UNITED STATES of America, Defendant.

Civil Action No. H–07–0343.
|
May 29, 2012.

**Attorneys and Law Firms**

Sallie W. Gladney, Thomas E. Redding, Redding &
Associates, Teresa Jean Womack, Houston, TX, for Plaintiffs.

Michael D. Powell, Dept. of Justice, Dallas, TX, for
Defendant.

### MEMORANDUM AND OPINION

LEE H. ROSENTHAL, District Judge.

 *1  This tax-refund suit filed by Alfonso and Sandra
Santa Maria Varela is one of a number arising out of
limited partnerships managed by American Agri–Corp., Inc.
(AMCOR). Following the procedures under TEFRA,[1] the
Internal Revenue Service issued proposed adjustments to
the AMCOR partnerships' tax returns disallowing certain
expense deductions the limited partners had claimed, which
increased their income-tax liability for the corresponding tax
year. The IRS also assessed enhanced or penalty interest under
26 U.S.C. § 6621(c). The Varelas, like other limited partners,
paid and filed suit seeking a tax refund.

[1]    The Tax Equity and Fiscal Responsibility Act of 1982,
      Pub.L. No. 97–248, 96 Stat. 324, 648–71 (codified in
      various sections of the Internal Revenue Code, including
      26 U.S.C. §§ 6221–32).

In June 2011, this court granted the government's motion for
summary judgment on the Varelas' refund claims for 1984
and 1985, finding no jurisdiction in a partner-level refund
suit to adjudicate the claim that the tax was assessed after the
three-year statute of limitations under 26 U.S.C. § 6501(a)
had expired. (Docket Entry No. 45). The remaining claim,

addressed in this memorandum and opinion, is for refund of
penalty interest under § 6621(c). The Varelas abandoned their
1984 penalty-interest refund claim, leaving the 1985 claim.
(*See* Docket Entry No. 54, at 1 n. 4). The government and the
Varelas have cross-moved for summary judgment. (Docket
Entry Nos. 53–54; *see also* Docket Entry Nos. 58–61).

The government argues that this court lacks subject-matter
jurisdiction over the penalty-interest refund claim for two
reasons: first, resolving the claim under § 6621(c) would
require the court to look at partnership items over which it
lacks subject-matter jurisdiction under § 7422(h); and second,
the Varelas failed to file a timely refund claim. (Docket Entry
No. 53). The Varelas argue that they have presented evidence
that the stipulated decision entered by the Tax Court did not
include a finding that the transactions were tax-motivated or
"sham." As a result, the Varelas argue, the government cannot
prove that their underpayment was previously determined
to be tax-motivated in a partnership-level suit to which the
Varelas are bound by claim preclusion. The Varelas also
argue that their claim was timely. (Docket Entry No. 54). The
Varelas supplemented their arguments with two recent cases.
(Docket Entry Nos. 62, 64). The government responded that
neither case is relevant or helpful. (Docket Entry Nos. 63, 66).

The Varelas also have moved for reconsideration of this
court's grant of summary judgment on their limitations-based
refund claims. (Docket Entry No. 65). The Varelas argue that
a February 2012 decision of the Fifth Circuit, *A.I.M. Controls,
L.L.C. v. Commissioner,* 672 F.3d 390 (5th Cir.2012), requires
summary judgment in their favor. The government has
responded, and the Varelas have replied. (Docket Entry Nos.
67–68). The government also has provided notice of a recent
opinion of the Court of Federal Claims, *McCann v. United
States,* ––– Fed. Cl. ––––, 2012 WL 1886746 (2012). (Docket
Entry No. 69).

 *2  Based on the motions and related filings, the record,
and the applicable law, this court denies the Varelas' motion
for reconsideration, (Docket Entry No. 65); grants the
government's motion for summary judgment on the 1985
penalty-interest refund claim, (Docket Entry No. 53); and
denies the Varelas' cross-motion on that claim, (Docket Entry
No. 54). The reasons for these rulings are set out below.

### I. Background
A number of opinions detail the statutory background of
the AMCOR cases. *See, e.g., Duffie v. United States,* 600
F.3d 362, 365–67 (5th Cir.2010); *Irvine v. United States,* No.

**App. 4**

4:08–cv–2568, 2012 WL 1552936, at *1–2 (S.D.Tex. Apr.30, 2012); *Varela v. United States,* Civ. A. No. H–07–0343, 2011 WL 2173679, at *1–3 (S.D.Tex. June 1, 2011). It need not be repeated here.

"In a partnership-level proceeding, the Tax Court has jurisdiction to determine all partnership items for the tax year to which the FPAA relates." *Duffie,* 600 F.3d at 367. For tax years before 1997, the Tax Court lacks jurisdiction over nonpartnership items and affected items. *Id.* (citing 26 U.S.C. § 6226(f)). In a partner-level refund action, district courts lack jurisdiction over partnership items. *Id.* (citing 26 U.S.C. § 7422(h)). Items converted from partnership items to nonpartnership items through settlement with the IRS fall within a district court's jurisdiction. *Id.* (citing 26 U.S.C. § 6231(b)(1)(C)). District courts generally have jurisdiction over a taxpayer's refund action. 28 U.S.C. §§ 1340, 1346(a)(1); *see also Matthews v. United States,* Civ. A. No. 00–4131, 2010 WL 2305750, at *3 (S.D.Tex. June 8, 2010), *aff'd sub nom. Scott v. United States,* 437 F. App'x 281 (5th Cir.2011) (per curiam). TEFRA, however, strips courts of subject-matter jurisdiction over refund actions attributable to partnership items. 26 U.S.C. § 7422.

Alfonso Varela was a limited partner in two AMCOR partnerships, Agri–Venture II and Coachella–85 Partners. In 1991, based on its investigation, the IRS issued Notices of FPAAs for those partnerships' 1984 and 1985 returns—which, in turn, would adjust the Varelas' 1984 and 1985 returns. After the partnerships' TMPs—Frederick Behrens and Robert Wright—declined to contest the FPAAs, individual partners filed partnership-level suits in the Tax Court under 26 U.S.C. § 6226(b). The partners argued that § 6501's three-year assessment period had lapsed. In 1997, while these suits proceeded before the Tax Court, several individual partners settled their income-tax liability with the IRS by executing Forms 870–P(AD). For those partners who did not settle with the IRS, including the Varelas, the TMPs, who had by now intervened on behalf of the partnerships, and the IRS agreed to be bound by the results of a test case. In that test case, the Tax Court accepted the IRS's argument and ruled in its favor on the limitations ground. *See Agri–Cal Venture Assocs. v. Comm'r,* 80 T.C.M. (CCH) 295 (2000).

**\*3** After that ruling, the TMPs and the IRS filed a Joint Status Report with the Tax Court in December 2000 announcing "a basis for settlement of the partnership items at issue" in the AMCOR-partnership cases. (Docket Entry No. 25, Ex. 12, at 1 (0076)). The report provided "[a] summary of

the contingent basis for settlement." (*Id.*). For each AMCOR-partnership case, the TMPs and the IRS stated as follows in their joint report:

> The Decision to be entered in each partnership proceeding will contain the following factual findings by the Court:
>
>> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting.
>>
>> That the assessment of deficiencies in income tax that are attributable to the adjustments to partnership items for the years [1984, 1985 and 1986] are set forth herein and are not barred by the provisions of I.R.C. § 6229.

(*Id.,* at 6 (0081)). The report stated that this settlement:

>> will conclusively determine all controversies arising from the events except for claims or defenses ... which are unrelated to the determination of partnership items, affected items or the computation of interest due under I.R.C. § 6621(c). The parties expressly waive by stipulation in the Decision any right to take an appeal from the decision or any opinions entered by the Tax Court in these proceedings.

(*Id.,* at 6–7 (0081–82)). Counsel for the TMPs and for the IRS signed the report. (*Id.,* at 7 (0082)).

In April 2001, the IRS moved to have decisions entered in each of the AMCOR-partnership cases. This motion confirmed that the TMPs had reached "contingent agreements" to settle the disputed partnership items in each AMCOR case. (Docket Entry No. 25, Ex. 13, ¶ 8 (0086)). The agreement would bind "[a]ll partners in each partnership whose partnership items are to be determined in the FPAA Cases and who meet the interest requirements of I.R.C. § 6222(d)"—such as Alfonso Varela—once the Tax Court entered stipulated decisions in all cases consistent with the

agreement and those decisions became final. (*Id.*, ¶ 9 (0086)). The decisions would become final after all partners declined to object within 90 days after the motion was filed. (*See id.*, ¶ 19 (0088–89); *see also* Docket Entry No. 54, at 6). This provision appears to have been necessary because the TMPs "agree[d] to the proposed Decisions in these cases, but d[id] not certify that no party objects to the granting of [the IRS]'s Motion for Entry of Decision." (Docket Entry No. 25, Ex. 13, ¶ 18 (0088)). These provisions also appeared in Attachment C to the motion, the agreement itself. (*See id.* at 10–16 (0093–99)).

No partners objected within the 90–day period. The Tax Court granted the motion in July 2001. (*See id.* at 1 (0084)). The Tax Court simultaneously entered stipulated decisions in each of the AMCOR-partnership cases. In the *Coachella–85 Partners* decision, the Tax Court stated as follows:

  **\*4**   That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting; ...

  That the assessment of deficiencies in income tax that are attributable to the adjustments to partnership items for the year 1985 is not barred by the provisions of I.R.C. § 6229.

(Docket Entry No. 25, Ex. 19, at 2 (0159)).

The IRS assessed the Varelas $13,895 in taxes and $74,914 in penalty interest for the 1984 tax year, and $26,016 in taxes and $121,558.88 in penalty interest for the 1985 tax year. The Varelas paid these amounts in 2002 and requested a refund from the IRS in 2004. The IRS denied that request in January 2005. The Varelas filed this tax-refund suit in January 2007.

## II. The Motion for Reconsideration
Because reconsideration of the Varelas' limitations-based refund claims would moot the pending cross-motions for summary judgment on the remaining refund claim for penalty interest, the reconsideration motion is considered first. "While the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, such a motion may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order." *Shepherd v. Int'l Paper Co.,* 372 F.3d 326, 328

n. 1 (5th Cir.2004). Whether a motion is considered under Rule 59(e) or Rule 60(b) depends on when it is filed. "If the motion is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion." *Id.* The 2009 amendments to the Federal Rules of Civil Procedure extended the time for filing a Rule 59(e) motion from 10 days to 28 days. *See* FED. R. CIV. P. 59 Committee Note (2009); *Williams v. Thaler,* 602 F.3d 291, 303 n. 7 (5th Cir.2010). Neither Rule 59(e)'s 28–day deadline nor Rule 60(b)'s one-year deadline may be extended. FED. R. CIV. P. 6(b)(2).

The Varelas moved for reconsideration more than 28 days after this court granted summary judgment for the government. Rule 60(b), not Rule 59(e), governs. "Unlike a motion for new trial under Rule 59(a), however, Rule 60(b) only encompasses specifically enumerated grounds." *Weckesser v. Chicago Bridge & Iron,* 447 F. App'x 526, 529 (5th Cir.2011) (per curiam). They are:

  (1) mistake, inadvertence, surprise, or excusable neglect;

  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

  (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

  (4) the judgment is void;

  **\*5**   (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

  (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). Rule 60(b)(1) applies when the party seeking relief from judgment bases its motion on a legal error by the district court. *See Benson v. St. Joseph Regional Health Ctr.,* 575 F.3d 542, 547 (5th Cir.2009).[2] A Rule 60(b)(1) motion "may be used to rectify an obvious error of law, apparent on the record." *Id.* (internal quotation marks omitted); *McMillan,* 4 F.3d at 367. The "focus on 'obvious' legal error, which [the Fifth Circuit] as a matter of course would correct anyway, is to prevent a Rule 60(b) motion from being used as a substitute for a timely appeal on disputed issues." *Benson,* 575 F.3d at 547.

2

Rule 60(b)(6) does not apply to claims of legal error: "claims of legal error or mistake ... are subsumed under subsection (1)." *McMillan v. MBank Fort Worth, N.A.,* 4 F.3d 362, 367 (5th Cir.1993); *accord Castleberry v. CitiFinancial Mortg. Co. Inc.,* 230 F. App'x 352, 356 (5th Cir.2007) (per curiam).

The basis of the Varelas' argument for reconsideration is that the Fifth Circuit's recent decision in *A.I.M. Controls* confirms their earlier summary-judgment argument that § 7422(h) should not be interpreted to bar their limitations-based refund claim under § 6501. The government contests this reading of *A.I.M. Controls.* This court finds the Varela's proposed interpretation of that case unpersuasive as a basis for reconsideration.

*A.I.M. Controls* holds that, under § 6226(b), the 150–day deadline for non-TMP partners such as Alfonso Varela to challenge an FPAA in federal court is jurisdictional and cannot be equitably tolled. *See generally* 672 F.3d at 395. *A.I.M. Controls* does not hold that all provisions of § 6226 should be "strictly construed." (*See* Docket Entry No. 65, at 5). The issue in *A.I.M. Controls* was whether one statutory subsection— § 6226(b)—was jurisdictional. In answering "yes" to that question, the Fifth Circuit did not rely on broad pronouncements about statutory construction. *A.I.M. Controls* does not appear to affect this court's previous conclusion that, based on the record and extensive case law, § 7422(h) barred review of the Varelas' limitations-based § 6501 claim. As in *Weiner v. United States,* 389 F.3d 152 (5th Cir.2004), one of the Fifth Circuit precedents discussed at length in this court's previous opinion, the Varelas' "refund claims are based entirely on the theory that the IRS had no authority to assess tax against them in [2002] because the FPAA statute of limitations had run for the years [1984 and 1985]." *Id.* at 156. "[B]ecause the FPAA limitations issue affects the partnership as a whole," it is a partnership item, which a district court lacks jurisdiction to review. *Id.* at 156–57; *accord McCann,* 2012 WL 1886746, at *4 ("As made explicit in *Prati,* the statute of limitations is categorically a partnership item. Thus, any refund claim based on a violation of the statute of limitations is an action 'for a refund attributable to [a] partnership item[ ],' I.R.C. § 7422(h), and barred."); *Matthews,* 2010 WL 2305750, at *3–4 (" § 7422(h) deprives district courts of subject matter jurisdiction to consider § 6229(a) statute of limitations arguments in taxpayer refund suits because § 6229(a)'s limitations period is a partnership item."), *aff'd sub nom. Scott,* 437 F. App'x 281.

**\*6** The Varelas are not entitled to reconsideration because they have not demonstrated a legal error or other basis that would require a different result. The motion for reconsideration is denied.

### III. The Cross–Motions for Summary Judgment

The Varelas and the government have cross-moved for summary judgment on the Varelas' remaining claim for refund of the penalty interest assessed for the 1985 tax year, under 26 U.S.C. § 6621(c), based on the Coachella–85 partnership.

#### A. The Applicable Law

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir.2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 326 (5th Cir.2009) (internal quotation marks omitted). " 'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.' " *United States v. $92,203.00 in U.S. Currency,* 537 F.3d 504, 507 (5th Cir.2008) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart,* 486 F.3d 112, 119 (5th Cir.2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations,

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1936313, 109 A.F.T.R.2d 2012-2303, 2012-1 USTC P 50,374

by unsubstantiated assertions, or by only a scintilla of evidence.' " *Boudreaux,* 402 F.3d at 540 (quoting *Little,* 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves,* 538 F.3d 373, 376 (5th Cir.2008). When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid–Continent Cas. Co. v. Bay Rock Operating Co.,* 614 F.3d 105, 110 (5th Cir.2010) (internal quotation marks and alteration omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e) (2).

### B. Recent Case Law

**\*7** A number of recent circuit cases—*Prati v. United States,* 603 F.3d 1301 (Fed.Cir.2010) ("*Prati III* "); *Duffie v. United States,* 600 F.3d 362 (5th Cir.2010); and *Keener v. United States,* 551 F.3d 1358 (Fed.Cir.2009)—arise from similar partnerships and involve similar issues. More recent district-court cases have applied those cases. *See, e.g., McCann v. United States,* —— Fed. Cl. ——, 2012 WL 1886746 (2012); *Irvine v. United States,* No. 4:08–cv–2568, 2012 WL 1552936 (S.D.Tex. April 30, 2012); and *Kercher v. United States,* No. 4:07–cv–310, 2012 WL 874325 (E.D.Tex. Mar.14, 2012). These district cases were brought by limited partners in AMCOR partnerships. Those suits not only raised claims similar to those here but also involved similar arguments in support of those claims made by the same attorneys who represent the Varelas. *Kercher* and *McCann* involved nonsettling partners who participated in stipulated decisions entered by the Tax Court. The district courts rejected the partners' claims for refunds of penalty interest. In *Irvine,* the partners settled their income-tax liability with the IRS in 1997 and did not agree to be bound by stipulated decisions entered by the Tax Court.

Because the Fifth Circuit's decision in *Duffie* is binding on this court, it is useful to describe it. John Duffie was a limited partner in an AMCOR partnership, Texas Farm Venturers. The facts described above for the Agri–Venture II and Coachella–85 partnerships—the IRS investigation, the test case before the Tax Court, the stipulated decision entered by the Tax Court—applied to Duffie as well. In September 2006, the Duffies sued in the Southern District of Texas seeking a refund for the tax and penalty-interest assessments. The

Duffies abandoned their tax-refund claim but pursued their penalty-interest refund claim under § 6221(c). The Duffies and the government cross-moved for summary judgment. The district court found that claim preclusion applied to prevent the Duffies from relitigating the Tax Court's determination of the partnership-item component of the § 6621(c) interest assessment, including the determination that the transactions resulting in the adjustments were sham transactions; that § 7422(h) deprived the district court of jurisdiction to consider the Duffies' claim that the Tax Court erred in determining that the transactions were shams or tax-motivated, despite the fact that they were affected items and not partnership items (because whether the transactions were shams was the partnership-item component of an affected item); and the Duffies' failure to file a timely refund claim deprived the district court of subject-matter jurisdiction. The Fifth Circuit adopted the district court's opinion. 600 F.3d at 364.

A critical issue in the claim-preclusion analysis was whether the Tax Court's decision in *Texas Farm Venturers* determined that the partnership's transactions leading to the IRS's adjustments were tax-motivated transactions. The Duffies argued "that the Tax Court's determination that the partnership transactions that resulted in the adjustments 'lacked economic substance, as described in former I.R.C. § 6652(c)(3)(A)(v)' is not a finding of tax-motivated transactions." 600 F.3d at 373. The court rejected the Duffies' argument, agreeing with other courts that "had examined the language in the consolidated [AMCOR] cases and found that it clearly stated that the partnership's transactions were tax-motivated, allowing the IRS to impose interest under Section 6621(c)." *Id.* (citing *Nault v. United States,* 517 F.3d 2, 5 (1st Cir.2008); and *Kimball v. Comm'r,* 95 T.C.M. (CCH) 1306 (2008)). The court concluded that "[t]he Tax Court did determine—and had jurisdiction to do so—that the partnership's transactions resulting in the adjustments were a sham." *Id.* at 378. As a result, claim preclusion barred the Duffies from "disput [ing] or relitigat[ing] the determinations made in the Tax Court as to the partnership-item components of the Section 6621(c) interest assessment," including that the "Texas Farm Venturers transactions that resulted in the adjustments were sham transactions." *Id.* at 382. Claim preclusion, however, did not prohibit the Duffies from litigating "the nonpartnership-item components of Section 6621(c) interest: whether their underpayment was substantial and whether it was attributable to the transaction previously determined to be tax motivated." *Id.*

**App. 8**

2012 WL 1936313, 109 A.F.T.R.2d 2012-2303, 2012-1 USTC P 50,374

**\*8** The court also analyzed whether it had subject-matter jurisdiction over the Duffies' penalty-interest refund claim. Under 26 U.S.C. § 7422(h), "[n]o action may be brought for a refund attributable to partnership items [.]" Because the Duffies' claim rested on their argument that the Tax Court incorrectly determined that Texas Farm Venturers engaged in tax-motivated transactions, their refund claim was based on "the nature of a partnership's activities" and therefore "based on the determination of a partnership item." 600 F.3d at 383. Section 7422(h) deprived the district court of jurisdiction to review that claim.

Finally, apart from § 7422(h), the court found an additional bar to review: limitations. "A taxpayer's failure to file a timely refund claim with the IRS deprives the district court of subject-matter jurisdiction." Id. at 384. Under TEFRA, a refund claim based on the erroneous computation of a partnership adjustment must be filed with the IRS "within six months after the IRS mails a notice of computational adjustment to the partner." Id. at 385 (citing 26 U.S.C. § 6230(c)(2)(A)). A refund claim based on a substantive affected item—"an item that is dependent on factual determinations to be made at the individual partner level"—is subject to the Tax Code's two-year statute of limitations. Bartimmo v. United States, 525 F.Supp.2d 879, 884 (S.D.Tex.2007). Because the only factual determination to be made was whether the Duffies' "tax underpayment resulting from the partnership transactions previously found to be tax-motivated was substantial, $1,000 or greater," the challenged interest assessment was a computational affected item subject to TEFRA's six-month statute of limitations. Duffie, 600 F.3d at 386. The Duffies did not file their refund claim until almost two years after receiving the IRS's adjustment notice. As a result, their claim was untimely, stripping the district court's jurisdiction to review the claim. Id.

The court cited to the Federal Circuit's decision in Keener v. United States, 551 F.3d 1358 (2009). Duffie, 600 F.3d at 364. In Keener, another AMCOR tax-refund suit, the partners had argued that the FPAAs had not conclusively determined that their tax underpayments, leading to the adjustments, were attributable to tax-motivated transactions. Though the Federal Circuit rejected this argument on the merits, it did so on the assumption that § 7422(h) did not preclude the court from reaching the argument. See 551 F.3d at 1367 ("Even assuming that the Court of Federal Claims had jurisdiction over this argument ...").

The more recent district-court cases do not definitively resolve whether § 7422(h) bars jurisdiction to determine whether the Tax Court in fact made a tax-motivated transactions finding. In Kercher, which involved facts even closer to the present case than Duffie, the district court rejected the taxpayers' argument that it was necessary to analyze first whether claim preclusion applied to the Tax Court partnership-level decision before determining jurisdiction under § 7422(h). Like Alfonso Varela, Kenneth Kercher was a limited partner in the Coachella–85 partnership. After the Coachella–85 Partners decision, in July 2002, the IRS mailed Kercher a notice of computational adjustment. A month later, the IRS assessed him for additional tax and penalty interest under § 6621(c) for the 1985 tax year. Kercher paid the assessment in May 2005 and filed a refund claim with the IRS. After the IRS denied that claim in June 2005, the Kerchers sued in the Eastern District of Texas, seeking a refund of the tax and penalty-interest assessments. 2012 WL 874325, at \*5. The Kerchers and the government cross-moved for summary judgment on this refund claim. As in Duffie, the government argued that the district court lacked subject-matter jurisdiction to hear the claim under § 7422(h) and that the claim was not timely filed.

**\*9** The district court first determined that limitations barred the Kerchers' refund claim for the tax assessment. "Since the additional tax liability is a computational affected item, Kercher was required to file his refund as to this claim within TEFRA's six-month limitations period." Id. at \* 8 (citing 26 U.S.C. § 6230(c)(2)(A); Duffie, 600 F.3d at 386)). The Kerchers argued that the IRS's notice of computational adjustment was defective and had not triggered the limitations period. The court rejected this argument, concluding that the Form 4549A sent to the Kerchers with the notice—which clearly stated the additional tax due—adequately notified them of the additional tax liability. Id.

On the other hand, the court concluded that limitations did not bar the Kerchers' penalty-interest refund claim. The Kerchers argued that the notice of computational adjustment was defective, pointing to the Form 4549A's listing of "0.00" for "TMT Interest—computed 03/22/2003 on TMT underpayment." Id. at \*9. One case before the Court of Federal Claims, under nearly identical circumstances, had held that the listing "d[id] not indicate that the IRS actually intended to apply the enhanced interest rate specified in former Section 6621(c)." McGann v. United States, 76 Fed. Cl. 745, 759 (2007). The notice did not trigger the six-month limitations period, making the taxpayers' refund claim timely.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**App. 9**

*See id.* at 761. The *Kercher* court agreed with *McGann,* 2012 WL 874325, at *10.

The *Kercher* court then analyzed whether § 7422(h) was a bar to review of the refund claim. The Kerchers, citing *Duffie,* "argue[d] that the Court must first address whether *res judicata* applies to the Tax Court's partnership-level proceeding prior to determining whether I.R.C. § 7422(h) applies." *Id.* at *11. The district court rejected this argument about the order of analysis:

> In *Duffie,* the court addressed *res judicata* as an alternative ground for denying jurisdiction. *Duffie* did not analyze the *res judicata* issue as a prerequisite to reaching I.R.C. § 7422(h). *See Duffie,* 600 F.3d at 382; *Keener v. United States,* 551 F.3d 1358, 1365 (Fed.Cir.2009); *Rowland v. United States,* No. 7:07–cv–18–O, 2011WL 2516170, at * 13–14 (N.D. Tex. June 22, 2011). The Court does not believe that it is either necessary or required to address any *res judicata* claim prior to examining I.R.C. § 7422(h).

*Id.* The court noted that the Kerchers raised the same argument that the taxpayers in *Keener* had raised before the Federal Circuit: "that the IRS improperly imposed penalty interest on them because their underpayments were not attributable to TMTs." *Id.* The Federal Circuit concluded in Keener that it lacked jurisdiction to review the claim because "the partners' positions that the partnerships' transactions were not 'shams' would amount to review of a partnership item." *Id.* (citing *Keener,* 551 F.3d at 1366–67). The *Kercher* court followed the same reasoning. "Kercher seeks a refund based upon the nature of the partnership's transaction. Since the nature of the partnership's transaction is a partnership item, Kercher's claim is 'attributable to' a partnership item and is therefore barred under I.R.C. § 7422(h)." *Id.*

 **\*10** The *Kercher* court also rejected the taxpayers' argument, again one that was raised and rejected in *Keener,* that § 7422(h) did not bar a court from first determining whether the Tax Court had made a determination that the transactions leading to the adjustments were tax-motivated:

The Court finds that Kercher's argument on whether the Tax Court ever made a determination at the partnership-level of a TMT is nevertheless an inquiry into a partnership item. "That question is no less 'attributable to partnership items' than the question of whether the underlying transactions were themselves TMTs."

*Id.* at * 12 (quoting *Acute Care Specialists II, Ltd. v. United States,* No. 11 C 465, 2011 WL 6318733, at *8 (N.D.Ill.Dec.14, 2011)). And, in any event, the court noted that the language of the stipulated decision entered by the Tax Court equated lack of economic substance with sham transaction. *Id.* (citing *Prati III,* 603 F.3d at 1309; *Rowland,* 2011 WL 2516170, at *13–14). Because the Kerchers' claim was "attributable to" the nature of the Coachella–85 partnership's transactions, the court concluded, § 7422(h) deprived the district court of subject-matter jurisdiction.

*Irvine,* like *Duffie* and *Kercher,* involved a tax-refund suit brought by partners of AMCOR partnerships, with a critical difference. "In 1999 and 2000, Plaintiffs settled with the IRS on Forms 870–P(AD), agreeing, as applicable, that 50% or more of each partnership's original partnership-item deductions were correct as originally reported." 2012 WL 1552936, at *3. These partners were not parties to the 2000 *Agri–Cal Venture* test case and stipulated Tax Court decisions. The IRS assessed the *Irvine* partners additional tax and penalty interest under the Forms 870–P(AD). The partners paid their assessments, filed refund claims with the IRS, then sued in the Southern District of Texas for refunds of the tax and penalty-interest assessments. *Id.*

As in *Duffie* and *Kercher,* the *Irvine* court held that § 7422(h) barred review of the partners' limitations-based tax-refund claims. These claims "require[d] the Court to determine whether extensions under Section 6229 apply, which, in turn, require[d] the Court to make determinations of partnership items," barred by § 7422(h). *Id.* at *7. Unlike the courts in *Duffie* and *Kercher,* however, the *Irvine* court granted summary judgment in the partners' favor on their penalty-interest refund claims under § 6621(c). *See id.* at *8. The *Irvine* partners were not parties to the *Agri–Cal Venture* test case or the subsequent stipulated decisions before the Tax Court. Their case was similar to *Weiner v. United States,* 389 F.3d 152 (5th Cir.2004), which also involved partners who settled with the IRS. *Id.* at 154. Their settlement agreements —unlike the stipulated decisions entered by the Tax Court in *Duffie*—had no tax-motivated-transaction determination. Absent this determination, the Fifth Circuit concluded, the

App. 10

IRS's assessment of penalty interest was improper and the partners were entitled to refunds. *See id.* at 162–63. Because *Weiner* rather than *Duffie* controlled, the *Irvine* court concluded that the settling partners in that case were entitled to refunds of the penalty-interest assessments as well. *See* 2012 WL 874325, at *8–9.

 **\*11** *McCann* is the most recently decided tax-refund case involving limited partners of an AMCOR partnership. Lawrence McCann was a limited partner in two AMCOR partnerships, Emperor Seedless–85 and Agri–Cal Venture Associates. Like the partners in *Duffie* and *Kercher* (and like Alfonso Varela), McCann was a nonsettling partner who agreed to be bound by the Tax Court's stipulated decision. [3] The McCanns paid their assessments, unsuccessfully sought a refund from the IRS, and then filed a refund suit before the Court of Federal Claims. *See* 2012 WL 1886746, at *1.

[3]    *McCann* was a consolidated case, involving the tax-refund claims by the McCanns and another couple, the Eppses. The Eppses, unlike the McCanns (and like the Irvines), did settle their tax liability with the IRS through executing a Form 870–P(AD). 2012 WL 1886746, at *1. This factual distinction led the court to analyze the Eppses' penalty-interest claim differently from the McCanns' (though ultimately reaching the same conclusion). *See id.* at * 8–9. Because the Varelas are more factually similar to the McCanns, the court's analysis of the McCanns' claims is relevant.

As the *Irvine* partners and the partners here, the McCanns argued that limitations barred the IRS's additional tax assessment. The court made short work of this claim, finding it clearly foreclosed under the Federal Circuit's decision in *Prati III,* holding that "the statute of limitations issues is categorically a partnership item," barring review under § 7422(h). 2012 WL 1886746, at *4.

Like the Varelas, the McCanns next argued that the Tax Court had not made a tax-motivated-transactions determination that would permit the IRS's assessment of penalty interest. The government responded that § 7422(h) barred the court from reviewing this argument because *"any* claim related to former Section 6621 penalty interest"—no matter the argument underlying the claim—"is inevitably a dispute over a partnership item and therefore cannot be heard in this court." *Id.* at *5. The *McCann* court rejected the government's contention. *McCann* read the Federal Circuit's decisions in *Keener* and *Prati III* as not establishing that *"all* claims involving former Section 6621 necessarily would be

attributable to partnership items," but instead as "ma[king] the commonsense observation that a claim which would operate to overturn an earlier partnership-level finding is, of course, attributable to a partnership item." *Id.* The "[i]nherent" holding of the Federal Circuit in *Keener* and *Prati III* was that the Tax Court, in those cases, had in fact made a taxmotivated-transactions determination, barring review under § 7422(h). *Id.* at *6. The *McCann* court explained why the court's determination of jurisdiction turned on the tax-motivated-transactions determination:

> If no such determination is made as to a particular partner, then the penalty interest is not based on a partnership transaction involving that partner. Consequently, a claim brought by that partner would not be attributable to a partnership item (and barred by § 7422(h)), *because no underlying partnership item would exist.*

*Id.* (emphasis added). The court cited *Duffie* in rejecting the government's argument that *"any* claim related to former § 6621 penalty interest is inevitably a dispute over a partnership item and therefore cannot be heard in this court." *Id.* at *5. "As explained by the Fifth Circuit in a similar AMCOR case, 'interest under [former] Section 6621(c) [ ] is an "affected" item that has both partnership and nonpartnership components.... [A] partner-level challenge of the nonpartnership-item component of Section 6621(c) [includes] ... *whether it was attributable to the transaction previously determined* at the partnership level to be tax-motivated." *Id.* at *6 (quoting *Duffie,* 600 F.3d at 372, 380). Under *McCann,* a district court has jurisdiction to determine its own jurisdiction under § 7422(h) by confirming the existence (or absence) of an underlying tax-motivated-transactions determination.

 **\*12** Like the Varelas, the McCanns introduced an affidavit from Behrens, the partnerships' TMP. He stated that, in stipulating to the Tax Court decisions, he had refused to concede that the transactions were tax-motivated. The *McCann* court rejected the affidavit as "unhelpful." First, "[t]he affidavit purports to present new facts as to the meaning of the earlier Tax Court decisions, but '[t]he interpretation of a court order involves a question of law,' not fact." *Id.* at *7 (quoting *Williams v. Principi,* 310 F.3d

App. 11

1374, 1377 (Fed.Cir.2002)). Second, even assuming that the court should construe the Tax Court's stipulated decisions as contracts, the affidavit was "superfluous" because the decisions were unambiguous. *Id.* The citation to § 6621(c)(3)(A)(v) "suffices to establish a finding of sham." *Id.* The phrase "so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv)" also established a finding of tax-motivated transactions. *Id.* at *8. "Thus, each phrase independently establishes that the adjustments were attributable to the partnerships' tax-motivated activities." *Id.* (quoting *Duffie,* 600 F.3d at 373). Accordingly, because the Tax Court had made a tax-motivated-transactions determination, the McCanns' refund claim for penalty interest was attributable to a partnership item and thus barred by § 7422(h).

### C. Analysis

As in *Duffie* and *Kercher,* the government makes three arguments in favor of summary judgment on the Varelas' remaining penalty-interest refund claim: (1) claim preclusion bars the claim; (2) this court lacks subject-matter jurisdiction because the claim is for "a refund attributable to partnership items," 26 U.S.C. § 7422(h); and (3) this court lacks subject-matter jurisdiction because the Varelas did not timely file the claim with the IRS.

The Varelas first argue that the government has conceded this court's subject-matter jurisdiction by invoking and arguing the affirmative defense of claim preclusion. (*See* Docket Entry No. 59, at 7 ("Raising that affirmative defense concedes that this Court has subject matter jurisdiction of its merits [.]"). This argument ignores the fact that parties cannot confer subject-matter jurisdiction through agreement or waiver. *E.g., Ballew v. Continental Airlines, Inc.,* 668 F.3d 777, 786 (5th Cir.2012). Nor can this court "bypass the jurisdictional question" by assuming that subject-matter jurisdiction exists. *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 531 n. 1 (5th Cir.2006); *see also Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("In *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), this Court adhered to the rule that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits."). "[Q]uestions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.' " *Owens–Illinois, Inc. v. Meade,* 186 F.3d 435, 442 n. 4 (4th Cir.1999) (quoting 2 JAMES WM. MOORE

ET AL., MOORE'S FEDERAL PRACTICE § 12.30[1] (3d ed.1998)). [4]

[4]     The exception to this rule, inapplicable here, is that "a federal court may decide a straightforward question concerning personal jurisdiction without first determining that it has subject-matter jurisdiction over the case." *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 480 (4th Cir.2005) (citing *Ruhrgas,* 526 U.S. at 588).

**\*13** The Varelas argue that *Duffie* requires this court first to conduct a claim-preclusion analysis to resolve whether the Tax Court previously determined that the Coachella–85 partnership transactions leading to the adjustments at issue in this case were tax-motivated transactions. The Varelas argue that resolving the claim-preclusion question is necessary to determine if § 7422(h) bars their claim. "If no prior partnership-item TMT determination was made, then § 7422(h) cannot bar the § 6621(c) claim because it is not attributable to (*i.e.,* does not challenge) a partnership item." (Docket Entry No. 59, at 14). *McCann* supports the Varelas' position. [5] The government responds that § 7422(h) bars even this argument. (*See* Docket Entry No. 60, at 5–6). *Kercher, Acute Care Specialists II,* and *Bush v. United States,* 101 Fed. Cl. 791, 797–98 (2011), as well as *Prati III,* support the government's position.

[5]     *Irvine* also appears to support the Varelas' position, though it is less clear. *See* 2012 WL 1552936, at *8–9.

Under either approach, § 7422(h) clearly bars the Varelas' penalty-interest refund claims. The record is clear that the Tax Court did determine that the partnership transactions leading to the adjustments were tax-motivated, barring review under § 7422(h). And if § 7422(h) precludes this court from reaching that question, the Varelas' claim also fails.

Federal courts lack jurisdiction over tax-refund claims that are "attributable to partnership items[.]" 26 U.S.C. § 7422(h). The Tax Code defines a "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." *Id.* § 6231(a)(3). Under the Treasury Regulations, items that "are more appropriately determined at the partnership level than at the partner level" include "[i]tems of income, gain, loss, deduction, or credit of the partnership[.]" 26 C.F.R. §

301.6231(a)(3)–1(a). Additionally, "[t]he term 'partnership item' includes the accounting practices and the *legal and factual determinations* that underlie the determination of the amount, timing, and *characterization* of items of income, credit, gain, loss, deduction, etc." *Id.* § 301.6231(a)(3)–1(b) (emphasis added). As *Keener*—which the Fifth Circuit cited approvingly in *Duffie*, 600 F.3d at 364—noted, "the applicability of § 7422(h) turns on whether Taxpayers' refund claims are due to, caused by, or generated by a partnership item." 551 F.3d at 1365 (internal quotation marks omitted). Section 7422(h) applies when a taxpayer's claim is due to, caused by, or generated by the legal and factual determinations that underlie the determination of the characterization of partnership items.

In *Duffie,* the taxpayers similarly argued that the language of the partnership-level decision did not amount to a determination that the transactions at issue were tax-motivated transactions. The challenged language in that case was:

> **\*14** That the adjustments to partnership income and expense for the taxable year 1984 are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A) (V), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting.

600 F.3d at 369. The *Duffie* court rejected that argument, concluding that the Tax Court had determined that the disputed transactions were tax-motivated transactions:

> In other AMCOR partnership cases, courts have examined the language from the Tax Court's agreed decision in the consolidated cases and found that it clearly stated that the partnership's transactions were tax-motivated, allowing the IRS to impose interest under Section 6621(c). *See Nault v. United States,* 517 F.3d 2, 5 (1st Cir.2008); *Kimball v. Comm'r of Internal Revenue,* T.C.2008–78, 2008 WL 862339 (U.S. Tax Court 2008) (because the partnership's

transactions lacked economic substance, they constituted tax motivated transactions). In *Nault,* the court stated:

> The reference to [Section 6621(c)(3)(A)(v) ], which helps to define tax-motivated transactions, confirms that the transactions were "sham[s] or fraudulent transaction[s]" and therefore lacked economic substance. The phrase "so as to result in a substantial distortion of income and expense" simply tracks the language of the former 26 U.S.C. § 6621(c)(3)(A)(iv), which likewise helps to define tax-motivated transactions. Thus, each phrase independently establishes that the adjustments were attributable to the partnerships' tax-motivated activities.

517 F.3d at 5 (internal citations omitted).

*Id.* at 373.

The language in the *Coachella–85 Partners* decision is materially indistinguishable from the language at issue in *Duffie.* The *Coachella–85 Partners* decision stated in relevant part:

> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting[.]

(Docket Entry No. 25, Ex. 19, at 2 (0159)). As *Duffie* and *Nault* make clear, this decision contains two separate, clear references to tax-motivated transactions: (1) "transactions which lacked economic substance, as described in former I.R.C. § 6621(c) (3)(A)(v)" and (2) "so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv) [.]" The Tax Court in *Coachella–85 Partners* unquestionably made a determination that the disputed transactions leading to the adjustment were tax-motivated transactions. *Accord McCann,* 2012 WL 1886746, at *7–8.

Varela v. U.S., Not Reported in F.Supp.2d (2012)

2012 WL 1936313, 109 A.F.T.R.2d 2012-2303, 2012-1 USTC P 50,374

**\*15** The Varelas make two arguments to avoid this result. First, they distinguish the *Coachella–85 Partners* language from the language at issue in *Prati III*. The relevant part of the Tax Court decision in *Prati III* read: "transactions, as described at § 6621(c)(3)(A)(v), which lacked economic substance." In the *Coachella–85 Partners* case, the Tax Court decision read: "transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v)." According to the Varelas, "[t]he difference between [these provisions] cannot be overemphasized." (Docket Entry No. 61, at 7). This first argument is unpersuasive. The additional provision—"so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv)"—independently demonstrates the Tax Court's tax-motivated-transaction determination in *Coachella–85 Partners. See Duffie,* 600 F.3d at 373. *Duffie* is binding precedent exactly on point, and *McCann* is in accord. *See* 2012 WL 1886746, at \*8.

Second, the Varelas argue that "[t]he preclusive effect of an agreed decision is determined by the intent of the parties." (Docket Entry No. 54, at 20). The Behrens affidavit, which the Varelas submitted, states that, in agreeing to the decision with the IRS, he did not intend to admit that the transactions were tax-motivated. (*See id.,* at 20–24 & Ex. 1). Because the stipulated decision entered by the Tax Court resulted from the parties' settlement, the decision is construed using "the same basic rules that govern the interpretation of ordinary contracts." *Nault,* 517 F.3d at 4 (citing *United States v. ITT Cont'l Baking Co.,* 420 U.S. 233, 235–37 (1975)); *accord Young v. IMO Indus., Inc.,* 541 F.Supp.2d 433, 446 (D.Mass.2008) (quoting *Nault* ); *see also Dean v. City of Shreveport,* 438 F.3d 448, 460 (5th Cir.2006) ("When interpreting a consent decree, general principles of contract interpretation govern."). Federal courts "do not ordinarily examine extrinsic evidence to alter or clarify the terms of an otherwise unambiguous contract," *Nault,* 517 F.3d at 7; *accord Addicks Servs., Inc. v. GGP–Bridgeland, LP,* 596 F.3d 286, 294 (5th Cir.2010) (Texas law), and "cannot create an ambiguity where none exists." *Lloyds of London v. Transcontinental Gas Pipe Line Corp.,* 101 F.3d 425, 429 (5th Cir.1996). The language of the stipulated decision, including references to §§ 6621(c)(3)(A)(iv) and (v), unambiguously establish the Tax Court's determination of tax-motivated transactions in *Coachella–85 Partners. See Nault,* 517 F.3d at 5–6 (rejecting the taxpayers' argument that this language is ambiguous); *see also Duffie,* 600 F.3d at 373 (agreeing that the language in the AMCOR-partnership cases "clearly

stated that the partnership's transactions were tax motivated"); *McCann,* 2012 WL 1886746, at \*7–8. [6]

[6]    "[I]n the exceptional case, a latent ambiguity in seemingly clear contract language may require [a court] to consider extrinsic evidence to determine the actual object of the parties' agreement." *Nault,* 517 F.3d at 7. This is not an exceptional case. There is no latent ambiguity in the stipulated decision. Through the Behrens affidavit, the Varelas would not only have this court read an ambiguity into the stipulated decision, but also interpret the decision to have a meaning "flatly contradictory to the plain meaning of its terms." *Nault,* 517 F.3d at 8.

If this court need not reach the issue of whether the Tax Court's stipulated decision determined the partnership transactions leading to the adjustments were tax-motivated, the Varelas also lose. *Kercher* and *Acute Care Specialists II* explain that to resolve that issue, the court would have to inquire into the factual and legal determinations underlying the Tax Court's opinion in that case. "Section 7422(h) does not bar only claims for refunds *of* partnership items, but rather claims *attributable to* partnership items." *Acute Care Specialists II,* 2011 WL 6318733, at \*8 (citing *Keener,* 551 F.3d at 1367–68) (emphasis in original). According to *Kercher, Acute Care Specialists II,* and *Bush,* the Varelas' claim is attributable to partnership items because it is based on challenging the factual and legal determinations made by the Tax Court in *Coachella–85 Partners*—even if that challenge is framed as an inquiry into what those determinations were. "If the Court were allowed to revisit whether the adjustments to partnership income and expenses were attributable to TMTs, the Court would be disregarding TEFRA's main purpose of conducting uniform proceedings as to partnership-level items." *Kercher,* 2012 WL 874325, at \*12 (citing *Duffie,* 600 F.3d at 384).

**\*16** In sum, the Varelas' penalty-interest refund claim under § 6621(c) fails. [7] The government is entitled to summary judgment on the Varelas' remaining refund claim for penalty interest assessed under § 6621(c).

[7]    Because this court lacks subject-matter jurisdiction over the Varelas' claim regardless of the claim's timeliness, this court need not address the government's alternative argument that limitations bars the Varelas' claim. *Compare Duffie,* 600 F.3d at 384–86 (finding claim untimely), *with Kercher,* 2012 WL 874325, at \*9–10

**Varela v. U.S., Not Reported in F.Supp.2d (2012)**

2012 WL 1936313, 109 A.F.T.R.2d 2012-2303, 2012-1 USTC P 50,374

(finding claim timely because the Form 4549A, which provided notice of the adjustment, was deficient).

## IV. Conclusion

The Varelas' motion for reconsideration, (Docket Entry No. 65), is denied. The government's motion for summary judgment on the 1985 refund claim, (Docket Entry No. 53), is granted. The Varelas' cross-motion on that claim, (Docket Entry No. 54), is denied. Final judgment is entered by separate order.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 1936313, 109 A.F.T.R.2d 2012-2303, 2012-1 USTC P 50,374

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

App. 15

# Exhibit D

Case 4:19-cv-01934   Document 29-1   Filed on 11/15/19 in TXSD   Page 23 of 42

Mcpeters v. Lexisnexis, Not Reported in Fed. Supp. (2011)

2011 WL 13253446

2011 WL 13253446
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas, Houston Division.

Karen MCPETERS, individually, and on
behalf of those individuals, persons and
entities who are similarly situated, Plaintiff,

v.

LEXISNEXIS, a division of
Reed Elsevier Inc., Defendant.

Civil Action No. 4-11-cv-02056
|
Signed 10/05/2011

**Attorneys and Law Firms**

Austin P. Tighe, Jr, Feazell & Tighe LLP, Austin, TX, Robert L. Mays, Jr, Attorney at Law, San Antonio, TX, for Plaintiff.

Cynthia Grace Burnside, John M. Hamrick, Holland Knight LLP, Atlanta, GA, Robert T. Mowrey, Amanda Marie Schaeffer, Benjamin David Lee Foster, Locke Lord LLP, Dallas, TX, David Alan McNamara, Port of Houston Authority, Houston, TX, J. Allen Maines, Holland & Knight LLP, Atlanta, GA, John G. Parker, S. Tameka Phillips, William K. Whitner, Paul Hastings et al LLP, Atlanta, GA, for Defendant.

## ORDER

KEITH P. ELLISON, US DISTRICT JUDGE

**\*1** Before the Court is Defendant LexisNexis's ("Defendant") Motion to Stay Proceedings Pending Resolution of Defendant's Motion to Dismiss. (Doc. No. 29.) ("Motion to Stay.") After considering the Motion to Stay, all responses and replies thereto, and the applicable law, the Court has determined that the Motion to Stay must be **GRANTED.**

The Court may grant a stay to prevent unnecessary discovery during the pendency of a motion to dismiss. See FED. R. CIV. P. 26(C); Fujita v. U.S., No. 10-10258, 2011 WL 721515, at \*2 (5th Cir. March 2, 2011) ("The district court has 'broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are

determined.' " (quoting Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987) ) ); Landry v. Air Line Pilots Ass'n Intern. AFL-CIO, 901 F.2d 404, 435-36 (5th Cir. 1990); Rio Grande Royalty Co. v. Energy Transfer Partners, L.P., No. H-08-CV-0857, 2008 WL 8465061, at \*1 (S.D. Tex. Aug. 11, 2008) (staying discovery "given the burden to Defendant of reviewing the documents and because Plaintiff has not demonstrated any need for the documents prior to this Court's ruling on the pending Motion"). However, " 'the issuance of [a] stay is by no means automatic.' " Von Drake v. Nat'l Broad. Co., Inc., 2004 WL 1144142, at \*1 (N.D. Tex. May 20, 2004) (quoting Spencer Trask Software and Info. Serv., LLC v. RPost Int'l Ltd., 206 F.R.D. 367, 368 (S.D.N.Y. 2002) ). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.' " In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) ); see also Am. Registry of Radiologic Technologists v. Bennett, 2010 WL 596340, at \*1 (W.D. Tex. Feb. 16, 2010). Courts determine whether to grant a motion to stay pending the resolution of a motion to dismiss based upon (1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay. Von Drake, 2004 WL 1144142, at \*1. The issuance of a stay may be particularly appropriate "where the disposition of a motion to dismiss might preclude the need for the discovery altogether thus saving time and expense." U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am., 571 F.Supp.2d 766, 768 (W.D. Tex. 2008) (quotations omitted).

In this case, the breadth and burden of discovery are substantial. Plaintiff's numerous requests include a large number of electronically stored documents, such as electronically stored information for each case for which Defendant provides E-filing services in Montgomery County, Texas. (Def.'s Mot. Stay at 1; Def.'s Reply at 3; Ex. A to Ex. I, at 4.) Furthermore, Defendant asserts strong claims in its Motion to Dismiss, which was filed in June. (Doc. No. 25.) By staying discovery, the Court will relieve Defendant of a significant burden. As Plaintiff's discovery will not assist her in her Motion to Dismiss, the stay will not be unduly prejudicial. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments

2011 WL 13253446

thereto." ); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)* ("Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."); *Lopez Hernandez v. Fincher*, No. Civ.A.3:04-cv-1084-G, 2005 WL 265214, at *5 (N.D. Tex Feb. 2, 2005).

**\*2** For the above stated reasons, Defendant's Motion to Stay is hereby **GRANTED.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2011 WL 13253446

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**App. 17**

Exhibit E

United States District Court
Southern District of Texas
**ENTERED**
May 08, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTINA CRUISE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-1153 |
| | § | |
| SHERI Y DEAN, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER ON DEFENDANT JUDGE SHERI Y. DEAN'S
### MOTION TO STAY DISCOVERY

Pending before this Court is the defendant, Judge Sheri Y. Dean's motion for stay of discovery (Dkt. No. 10). Upon consideration of the motion, the evidence, responses and replies on file, if any, the Court is of the opinion that the defendant's motion is meritorious and should be granted.

It is, hereby **ORDERED** that Judge Sheri Y. Dean's Motion for Stay of Discovery is **GRANTED**, and that discovery in this case is stayed pending the Court's issuance of an order on Judge Sheri Y. Dean's Motion to Dismiss (Dkt. No. 9).

It is so ORDERED.

SIGNED on this 8th day of May, 2018.

Kenneth M. Hoyt
United States District Judge

1 / 1

**App. 18**

Exhibit F

United States District Court
Southern District of Texas
**ENTERED**
April 05, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REYNALDO COLINDRES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-163 |
| | § | |
| UNIVERSITY OF TEXAS MD ANDERSON | § | |
| CANCER CENTER, | § | |
| | § | |
| Defendant. | § | |

## ORDER ON MOTION TO STAY

Pending before this Court is defendant The Board of Regents of the University of Texas System and/or University of Texas MD Anderson Cancer Center's motion to stay discovery (Dkt. No. 5). Upon consideration of the motion, the evidence, responses and replies on file, the Court is of the opinion that defendant's motion is meritorious and should be granted.

It is, hereby, **ORDERED** that defendant The Board of Regents of the University of Texas System and/or University of Texas MD Anderson Cancer Center's motion to stay discovery is **GRANTED**, and that discovery in this case is **STAYED** pending the Court's issuance of an Order on defendant's motion to dismiss (Dkt. No. 4).

It is so ORDERED.

SIGNED on this 5th day of April, 2018.

_____
Kenneth M. Hoyt
United States District Judge

**App. 19**

# Exhibit G

United States District Court
Southern District of Texas
**ENTERED**
September 19, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN B. WOODS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-1146 |
| | § | |
| LUBY'S, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT LUBY'S, INC.'S MOTION TO STAY DISCOVERY
PENDING RULING ON ITS MOTION TO DISMISS**

Before the Court is the defendant's motion to stay discovery pending the Court's ruling on its Motion to Dismiss (Dkt. No. 29). After reviewing the motion, the parties' briefing, the evidence submitted, and all applicable law, the Court concludes that discovery should be stayed pending the Court's ruling on Luby's Motion to Dismiss.

It is, therefore, **ORDERED** that the defendant's motion to stay discovery pending the Court's ruling on its Motion to Dismiss is **GRANTED**, in its entirety.

It is, further, **ORDERED** that all discovery is STAYED pending the Court's ruling on the defendant's Motion to Dismiss, but no later than December 31, 2017.

The Clerk shall enter this Order, and provide a true copy to all counsel of record.

It is so ORDERED.

SIGNED on this 19th day of September, 2017.

_____
Kenneth M. Hoyt
United States District Judge

1 / 1

**App. 20**

# Exhibit H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMMY ESQUIBEL, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-242 |
| | § | |
| SPRINT ENERGY SERVICES, LP, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER ON DEFENDANTS' MOTION TO STAY DISCOVERY

Before the Court is the defendants', Sprint Energy Services, LP and Sprint Waste Services, motion to stay discovery. Upon consideration of the motion, any response or reply and all other matters presented, the Court finds the motion is well-supported, meritorious and should be granted.

WHEREFORE**,** it is hereby Ordered that the defendants', Sprint Energy Services, LP and Sprint Waste Services, LP's motion to stay discovery is GRANTED and all discovery hereby stayed pending the disposition of the defendants' Rule 12(b) motion to dismiss.

WHEREFORE**,** in the alternative**,** it is hereby ORDERED that discovery is limited to the jurisdictional issues with respect to the named plaintiffs' only to answer and/or respond.

It is so ORDERED.

SIGNED on this 9th day of January, 2015.

_____
Kenneth M. Hoyt
United States District Judge

**App. 21**

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM STORES, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3569 |
| | § | |
| CITGO PETROLEUM CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Defendant, Citgo Petroleum Corporation, has filed a Motion to
Stay Discovery and a Memorandum in Support (Docket Entry No. 36).
Having reviewed Citgo's motion and memorandum, Plaintiffs'
Memorandum in Opposition (Docket Entry No. 49), and Citgo's Reply
(Docket Entry No. 50), the court is persuaded that Citgo's Motion
to Stay Discovery should be granted. Although normally the court
is reluctant to stay discovery because of the pendency of a motion
to dismiss, in this case the court is persuaded that the harm that
Citgo would suffer from discovery if the case were later dismissed
outweighs the harm plaintiffs would suffer from a delay in
initiating discovery if the case is not dismissed. If Citgo's
motion to dismiss is denied, any harm caused by a delay in
discovery can be ameliorated by imposing more rigorous deadlines

than those suggested by either party in the Joint Discovery/Case Management Plan.

Accordingly, Citgo's Motion to Stay Discovery (Docket Entry No. 36) is **GRANTED**, and discovery is **STAYED** pending a ruling by the court on Defendant's Motions to Dismiss.

**SIGNED** at Houston, Texas, on this 9th day of February, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-2-

Exhibit J

Case 4:19-cv-01934   Document 29-1   Filed on 11/15/19 in TXSD   Page 37 of 42

McAllen Anesthesia Consultants, P.A. v. United Healthcare..., Not Reported in...

2015 WL 12839785

2015 WL 12839785
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas, McAllen Division.

MCALLEN ANESTHESIA
CONSULTANTS, P.A., Plaintiff,
v.
UNITED HEALTHCARE
SERVICES, INC., et al, Defendants.

CIVIL ACTION NO. 7:14–CV–913
|
Signed 07/17/2015

**Attorneys and Law Firms**

Guillermo Tijerina, Jr., Tamara L. Rodriguez, Vidaurri, Lyde, Rodriguez & Haynes LLP, Edinburg, TX, for Plaintiff.

Raymond Earl Walker, Andrew G. Jubinsky, Figari Davenport LLP, Dallas, TX, for Defendants.

**ORDER**

Micaela Alvarez, UNITED STATES DISTRICT JUDGE

 **\*1** The Court now considers the "Motion to Stay Discovery," [1] filed by Defendant. Defendant informs the Court that it conferred with Plaintiff's counsel in an effort to resolve the dispute without court action, but the parties were unable to agree on the motion's disposition. Plaintiff has timely filed a response in opposition. [2] After considering the motion, response, record, and relevant authorities, the Court **GRANTS** the motion.

[1]     Dkt. No. 31 ("Motion").

[2]     Dkt. No. 33 ("Response").

**I. Background**
Plaintiff originally filed suit against Defendant and UnitedHealthcare of Texas ("UHC of Texas") in the County Court at Law #2 of Hidalgo County, Texas, asserting breach of implied contract, specific performance, and promissory estoppel claims. [3] Defendant then removed the case to this Court on the basis of federal question and diversity

jurisdiction, [4] and on February 3, 2015, the Court denied Plaintiff's motion to remand and dismissed UHC of Texas as improperly joined. [5] Shortly thereafter, on February 10, 2015, the parties appeared before the Court for an initial pretrial conference. [6] At the hearing, Plaintiff informed the Court that in light of the denial of the motion to remand, there was a possibility that it would seek to amend its state court petition to include certain extra-contractual claims significantly affecting the nature and complexity of the case. [7] Because Plaintiff had not actually alleged any of these federal causes of action at the time of the conference, the Court delineated a scheduling order consistent with the Rule 26 guidelines considering only the claims in the pleading as of the day of the conference. [8] The Court entered a written order to that effect, setting a discovery deadline of October 30, 2015. [9]

[3]     See Dkt. No. 1, Exh. 4.

[4]     See Dkt. No. 1.

[5]     Dkt. No. 19.

[6]     See Minute Entry for Initial Pretrial Conference held on February 10, 2015.

[7]     Id.

[8]     Id.

[9]     Dkt. No. 21.

On May 4, 2015, the Court granted Plaintiff's motion for leave to file an amended complaint. [10] The same day, Plaintiff timely filed an amended pleading, which added various extra-contractual causes of action, including fraud, negligent misrepresentation, tortious interference with a contract, and violations of RICO, the Deceptive Trade Practices–Consumer Protection Act ("DTPA"), and the Texas Insurance Code. [11] Defendant filed a motion to dismiss shortly thereafter, requesting that the Court dismiss the amended complaint in its entirety. [12] Plaintiff has timely responded, [13] and Defendant recently replied. [14] In the instant motion, Defendant requests that the Court stay discovery pending disposition of the motion to dismiss. [15]

[10]     Dkt. No. 28.

[11]     Dkt. No. 29.

App. 24

Case 4:19-cv-01934 Document 29-1 Filed on 11/15/19 in TXSD Page 38 of 42

McAllen Anesthesia Consultants, P.A. v. United Healthcare..., Not Reported in...

2015 WL 12839785

12    Dkt. No. 30.

13    Dkt. No. 32.

14    Dkt. No. 37.

15    Motion at p. 10.

## II. Discussion

The Court will begin its analysis by recognizing that the parties' dispute about the propriety of a stay centers on Defendant's immunity defense and jurisdictional challenge in the motion to dismiss. Specifically, among other things, Defendant argues that allowing discovery to proceed will "effectively deny [Defendant] the 'true measure of protection' afforded by immunity." [16] Plaintiff disagrees, arguing that a stay is not warranted and delaying discovery will prejudice Plaintiff. [17] In the alternative, Plaintiff prays that the Court allow discovery to proceed with respect to Defendant's immunity defense and the declaration of Robert Kukla from Employee Retirement System of Texas "as [Defendant] relies on his declaration in its motion to dismiss." [18]

16    *Id.* at p. 6.

17    *See* Response at ¶¶ 5–17.

18    Response at ¶ 18; Dkt. No. 30

**\*2** As recognized by the Fifth Circuit, the Federal Rules of Civil Procedure afford district courts "wide discretion in determining the scope and effect of discovery." [19] This power includes the ability to set the timing and sequence of discovery [20] and to stay discovery until preliminary questions that may dispose of the case are determined. [21] Indeed, Rule 26 expressly instructs the Court to limit the extent of discovery upon a determination that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." [22] Though the filing of a motion to dismiss does not necessarily implicate these concerns, it is within the sound discretion of the Court to postpone discovery pending resolution of Defendant's motion "for good cause shown." [23] In analyzing the propriety of a stay, courts consider various factors, including the breadth of discovery sought, the burden of responding to such discovery,

and the strength of the dispositive motion filed by the party seeking a stay. [24]

19    *Bradley v. Boysville, Inc.*, 240 F.3d 1073 (5th Cir. 2000).

20    Fed. R. Civ. P. 26(d).

21    *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).

22    Fed. R. Civ. P. 26(b)(2)(C)(iii).

23    *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 766, 767 (W.D. Tex. 2008); *Von Drake v. Nat'l Broad. Co.*, No. 3–04–CV–0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004).

24    *Id.*

Upon review of the instant filings and record, the Court finds that staying discovery at this time is proper in this case. Because of the substantial change in the complexity of Plaintiff's claims and the nature of Defendant's basis for dismissal, it is appropriate to resolve the issues presented in the motion prior to proceeding with further litigation. [25] Critical to the Court's analysis is the fact that Plaintiff has already responded to the motion to dismiss, and it fails to provide the Court with any particulars as to what discovery needs to be conducted to resolve the immunity inquiry or jurisdictional challenge. [26] In the response to the motion to stay, Plaintiff claims that "the Court should permit discovery as to defense [sic] of qualified immunity, which would include information related to [Defendant]'s financial interests. This discovery could prove that [Defendant] is not entitled to qualified immunity." [27] As to lack of subject matter jurisdiction, Plaintiff prays that it be allowed to conduct discovery to adduce "[f]acts regarding [Defendant]'s independent discretion and misrepresentations ...." [28] However, previously, Plaintiff fully responded to Defendant's motion to dismiss, merely making a general averment that it "requests additional response time in order to conduct discovery," without further elaboration. [29] The Court finds these vague requests without merit, particularly since it appears that the disagreement as to the applicability of the governmental immunity defense centers on a legal inquiry, and Plaintiff fully responded to Defendant's motion without any indication that additional specific facts were necessary to present its position on either question.

Case 4:19-cv-01934 Document 29-1 Filed on 11/15/19 in TXSD Page 39 of 42

McAllen Anesthesia Consultants, P.A. v. United Healthcare..., Not Reported in...

2015 WL 12839785

25    As noted in the parties' filings, Courts often find a stay
      of discovery appropriate when presented with immunity
      defenses. *Compare Collins v. Bauer*, No. 3:11–CV–887–
      B, 2011 WL 3874910, at *2 (N.D. Tex. Aug. 31, 2011)
      (granting stay of discovery) *with Estate of Sorrells v.
      City of Dallas*, 192 F.R.D. 203, 210 (N.D. Tex. 2000)
      (denying stay).

26    *Cf. Freeman v. United States*, 556 F.3d 326, 341 (5th
      Cir. 2009) (noting that the party seeking discovery before
      dismissal for lack of subject matter jurisdiction bears the
      burden of showing its necessity).

27    Response at ¶ 14.

28    *Id.* at ¶ 16.

29    Dkt. No. 32 at p. 34.

## III. Holding

For the foregoing reasons, the Court, finding good cause,
**GRANTS** the motion and stays discovery temporarily in this
case until it has an opportunity to review Defendant's motion
to dismiss and responsive filings. In turn, the Court **STAYS**
discovery for **sixty days** from entry of this order. The parties
need not respond to already-propounded discovery requests
until the expiration of the stay, at which time the calculation
of the response time will commence, excluding only the sixty-
day stay. Defendant's motion for leave to reply to the motion
to stay is therefore **DENIED AS MOOT.**

**\*3**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 12839785

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

App. 26

# Exhibit K

2017 WL 10605194

2017 WL 10605194
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas, Houston Division.

BHL BORESIGHT, INC., et al, Plaintiffs,

v.

GEO-STEERING SOLUTIONS,
INC., et al, Defendants.

Civil Action No. 4:15-CV-00627
|
Signed 05/26/2017

**Attorneys and Law Firms**

Michael C. Coker, Adams & Coker, PC, Tyler, TX, Tom Alan Cunningham, Cunningham Darlow LLP, Houston, TX, Kirby Blair Drake, Klemchuk LLP, Dallas, TX, for Plaintiffs.

Jesus David Cabello, Keith Alan Rutherford, Domingo Manuel LLagostera, Munira Jesani, Stephen Douglas Zinda, Blank Rome LLP, Houston, TX, for Defendants.

**OPINION AND ORDER**

MELINDA HARMON, UNITED STATES DISTRICT JUDGE

*1 Pending before the Court in the above-referenced cause is Plaintiff's Opposed Motion to Stay All Discovery and Motion Practice. Doc. 394. Defendants Statoil and Zaza filed their Joint Opposition to Plaintiff's Opposed Motion to Stay All Discovery and Motion Practice. Doc. 395. Defendants Geo-Steering Solutions, Inc. and Geo-Steering Solutions USA, Inc. (collectively, "GSSI"), Darrell Joy, and Neil Tice also filed a Response in Opposition to Plaintiff's Motion. Doc. 396. After considering the Motion, Responses, record, and relevant law, the Court grants BHL's Motion.

**I. Background**

The pending Motion to Stay is the most recent dispute in a long and contentious legal dispute between BHL and Defendants over the genesis of GSSI's geosteering software.

On February 12, 2016, GSSI filed a Motion to Stay All Extant Scheduling Order Deadlines and Depositions. Doc. 92. BHL opposed GSSI's Motion, but on March 30, 2016, the Court

granted it and suspended all deposition testimony. Doc. 138. After filing its First Amended Complaint in which it added additional defendants, Doc. 209, BHL filed a Motion to Lift Suspension of Depositions on October 3, 2016, so that it could depose the new defendants, Doc. 244. Magistrate Judge Stacy denied that Motion on March 27, 2017, and noted that there was "no appreciable change in circumstances since the District Court entered its March 30, 2016, Order." Doc. 370.

Since the Court entered the partial stay on March 30, 2016, there have been 258 docket entries, including a number of dispositive motions that this Court has yet to rule on. Arguing that the partial stay favors Defendants and "has all but halted this case," BHL now seeks a full stay of discovery until the Court rules on the pending motions. Doc. 394.

**II. Legal Standard**

"[T]he Federal Rules of Civil Procedure afford district courts 'wide discretion in determining the scope and effect of discovery.' " McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc., 7:14-CV-913, 2015 WL 12839785, at *2 (S.D. Tex. July 17, 2015) (quoting Bradley v. Boysville, Inc., 240 F.3d 1073 (5th Cir. 2000)). This includes the "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." Fujita v. United States, 416 Fed. App'x 400, 402 (5th Cir. 2011) (quoting Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir.1987)) (internal quotation marks omitted). "For example, under Federal Rule of Civil Procedure 26(c), the court may stay discovery for 'good cause,' such as a finding that further discovery will impose undue burden or expense without aiding the resolution of the dispositive motions." Id. (citing Landry v. Air Line Pilots Ass'n Int'l AFL–CIO, 901 F.2d 404, 435–36 (5th Cir. 1990); 6 James W. Moore et al., Moore's Federal Practice § 26.105[3][c] (3d ed. 2010)).

**III. Analysis**

In this case, there is no pending trial date. Nor are there impending deadlines or depositions. Moreover, the parties' litigious conduct and predisposition for filing repetitive and burdensome briefing on every minor dispute greatly favors a full stay of discovery and further motion practice until the Court rules on the pending motions.

**IV. Conclusion**

*2 For the foregoing reasons, it is hereby

**App. 27**

**ORDERED** that Plaintiff BHL Boresight, Inc.'s Opposed Motion to Stay All Discovery and Motion Practice is **GRANTED**.

**All Citations**

Slip Copy, 2017 WL 10605194

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.